**Robert Paul KILPATRICK, Plaintiff,**

v.

**Richard W. RILEY, Secretary of Education, Defendant.**

**No. Civ.A. 98–3180(RMU).**

United States District Court, District of Columbia.

April 27, 2000.

John Wesley Davis, Washington, DC, Isaac Joe, Jr., Baltimore, MD, Roberta Yvonne Wright, Graves & Horton, Washington, DC, for Plaintiff.

Mark E. Nagle, Wilma Antoinette Lewis, David Lloyd Smith, U.S. Attorney's Office, Washington, DC, Heather Jean Kelly, U.S. Attorney's Office, Civil Division, Washington, DC, for Defendant.

**MEMORANDUM OPINION**

URBINA, District Judge.

**Granting in Part and Denying in Part the Defendant's Motion to Dismiss Portions of Count II**

## I. INTRODUCTION

This matter comes before the court on the defendant United States Department of Education ("DOE")'s motion to dismiss parts of Count II of the two-count complaint. In Count II, the plaintiff alleges that DOE racially discriminated and retaliated[1] against him on at least seven occasions from 1980 through 1996. Specifically, the plaintiff alleges that DOE failed to properly classify his position as a Grade 14, effectively preventing him from being "promoted," excluded him from meetings related to his duties in 1995, ordered his supervisor to lower his 1995 performance rating and passed him over for selection as Director of the Department's Equal Employment Group in November 1996.[2]

DOE contends that the court should dismiss three portions of Count II for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). First, DOE seeks to dismiss that portion of Count II which arises from events covered in Mr. Kilpatrick's 1991 EEO complaint on the ground that he filed that complaint untimely and thus failed to exhaust his administrative remedies. *See* Compl. ¶ 14(a) & (b). Second, DOE seeks to dismiss the portion of Count II which alleges retaliation, on the ground that the plaintiff has not shown a causal connection between the 1979 protected activity and the allegedly retaliatory acts in 1990

---

**1.** Mr. Kilpatrick's complaint notes that he "has filed complaints of race, sex and retaliation discrimination." *See* Compl. ¶ 3. The complaint, however, does not contain any allegation that the DOE discriminated against Mr. Kilpatrick on the basis of his gender.

**2.** Count I alleges that DOE breached a 1997 settlement agreement between DOE and Mr. Kilpatrick relating to these same incidents of

alleged discrimination and retaliation. *See* Compl. ¶¶ 7–13. The court does not address Count I at this time because the instant motion to dismiss relates only to Count II. *See* Mot. to Dis. at 1 n. 1. The defendant will be given the opportunity to file a dispositive motion as to count one according to the schedule to be set in the forthcoming Initial Scheduling Order.

through 1996. *See id.* ¶ 14(a) & (b). Third and last, DOE asks the court to dismiss the portion of Count II which alleges the DOE discriminated and retaliated by handling the plaintiff's 1996 EEO complaint in an untimely fashion, *see* Compl. ¶ 16, on the ground that improper processing of an employee grievance is not an actionable adverse employment action.[3] *See* Defendant's Motion to Dismiss Count II in Part ("Mot. to Dis.") at 2–3.

For reasons which follow, the court will grant in part and deny in part the motion to dismiss the aforementioned portions of count II. The Order issued on March 31, 2000 specifies which claims survive the court's partial grant of the motion to dismiss.

## II. BACKGROUND

Robert P. Kilpatrick is an African–American man who is employed by the United States Department of Education ("DOE" or "the Department"). Since 1968 Mr. Kilpatrick has been employed by the DOE or its predecessor. *See* Compl. ¶ 3; Mot. to Dis. at 3. Mr. Kilpatrick's job responsibilities have been in the area of equal employment opportunity and employee discrimination complaints. *See* Compl. ¶¶ 3, 14(a) & (b); Mot. to Dis. at 3. In 1980, when DOE was created,[4] Mr.

Kilpatrick was made Acting Chief of the Complaints Analysis and Conciliation Unit, a grade GS–13 position. *Id.* ¶ 14(a)(1).

In Count II, Mr. Kilpatrick alleges that DOE discriminated against him on the basis of race in violation of Title VII. Specifically, Mr. Kilpatrick alleges that DOE has maintained a position-classification system which has had the "continuing effect of denying him promotions since 1980." *See* Compl. ¶ 6. He also alleges that DOE retaliated for his preparation of a report which concluded that "blacks and other minorities [employed by the DOE] were being disproportionately downgraded in comparison to their white counterparts. As a direct result of [Mr. Kilpatrick's] report, all negative classifications were rescinded and no one was downgraded." *See* Compl. ¶ 14a(2).[5] Mr. Kilpatrick does not specify what he means by "negative classifications", nor does he identify the DOE employees or positions discussed in or allegedly affected by his report.

Mr. Kilpatrick does specifically allege that the DOE discriminated and retaliated against him on the following seven occasions:

(1) In May 1980, the DOE failed to properly classify his position as grade GS–14 [6] and so failed to "promote" him to that level;

---

**3.** DOE's first memorandum also sought to dismiss Mr. Kilpatrick's request for relief on behalf of other unnamed DOE employees, on the ground that Mr. Kilpatrick lacks standing to request such relief. *See* Mot. to Dis. at 2–3, 18–19. DOE stated in its reply, however, "Ultimately, Defendant's argument is premature on this point and Defendant withdraws this argument." *See* Def.'s Reply to Pl.'s Opp'n. to Mot. to Dis. Count II in Part ("Reply") at 14 n. 7.

**4.** The DOE's predecessor was the now-defunct U.S. Department of Health, Education and Welfare (HEW).

**5.** Neither Mr. Kilpatrick's complaint nor his opposition to the motion to dismiss specifies exactly when he prepared the report. The EEO Counseling Report from his 1991 EEO Complaint, however, refers to a document described as "1979 study by the complainant: An Analysis of Adverse Impact of Recent Clas-

sification Surveys in the Office of Education [sic]." *See* Mot. to Dis., Ex. 1 at ¶ 18(6).

Nor does Mr. Kilpatrick explain to whom he distributed the report or how and when DOE became aware of the report. Nonetheless, for purposes of the instant motion, the court assumes *arguendo* that DOE officials with personnel decisionmaking authority became aware of the report some time prior to May 1980, when the first allegedly retaliatory/discriminatory incident occurred.

**6.** Mr. Kilpatrick has not alleged, however, that any non–African–American or non-minority employee in the same position had a higher grade assigned to that position. *Contrast Keith v. Duffey*, 77 F.Supp.2d 46, 50–51 (D.D.C.1999) (granting summary judgment to employer on discrimination claim where plaintiff, an African–American, failed to make out *prima facie* case of discrimination; the

(2) On August 8, 1990, DOE issued a memorandum which declined a request to "re-grade" Mr. Kilpatrick's position;

(3) The DOE did reclassify Mr. Kilpatrick's position as a grade GS–14 on February 7, 1991 but then undertook a series of actions to prevent him from receiving the promotion: refusing to forward correspondence needed for him to secure the promotion and "re-auditing" his position while not doing so for a similarly situated non-black employee;

(4) In November 1996, DOE improperly failed to select Mr. Kilpatrick for the position of Director of the Department's Equal Opportunity Group;

(5) At unspecified times, apparently in 1995 and/or 1996, the DOE "excluded [Mr. Kilpatrick] from meetings and briefings involving his duties;"

(6) DOE ordered Mr. Kilpatrick's supervisor to lower his 1995 performance rating; and

(7) DOE failed to investigate Mr. Kilpatrick's 1996 EEO complaint for 4 years, ignored EEOC orders directing it to do so, and failed to issue a final agency decision within 60 days of his complaint as required by regulations.

*Id.* ¶¶ 14a, 14b, 14c & 16.

*The 1991 EEO Complaint.* On September 10, 1990, Mr. Kilpatrick contacted an EEO counselor in connection with the August 8, 1990 memorandum in which DOE declined to re-grade his position. *See* Mot. to Dis., Ex. 1 at ¶ 7 and Ex. 2 at 1. Following the EEO counseling period, Mr. Kilpatrick filed EEO complaint # ED–912001 with the DOE on April 19, 1991 ("the 1991 EEO complaint"). *See* Compl. ¶ 6. The 1991 EEO complaint charged that the DOE had employed a position-classification system which wrongfully denied Mr. Kilpatrick promotions since 1980. *See* Compl. ¶ 14.

*The 1997 EEO Complaint and Purported Settlement.* In 1996, the DOE hired someone other than Mr. Kilpatrick as Director of the EEO Group. In December 1996, Mr. Kilpatrick sought EEO counseling as a precursor to filing an EEO complaint alleging that his nonselection constituted racial discrimination and retaliation. *See* Compl. ¶ 6. In April 1997, Mr. Kilpatrick alleges, he and the DOE reached a settlement agreement resolving the issues from both the 1991 EEO complaint and the 1996–1997 EEO counseling. *See id.* The DOE declined to sign the settlement, however, because he refused to accept a proposed amendment by DOE which would have paid him less interest than would otherwise be due under statute. *See id.* at ¶¶ 9–12.

Mr. Kilpatrick, however, felt that the DOE breached the settlement. Mr. Kilpatrick took two actions in response to the DOE's alleged breach of the settlement: (1) in September 1997, he filed charge # 97–033–IDR with the EEOC with regard to his 1996 non-selection ("the 1997 EEO complaint"); and (2) in 1998, he appealed to the EEOC on his allegation of breach. The EEOC issued its decision on

only non-minority employee who had been subject to same change in title and duties had been treated identically) with *Holland v. Board of Trustees of U.D.C.,* 794 F.Supp. 420 (D.D.C.1992) (white employee's pleading was adequate where he alleged that university failed to grant permanent status to his position from 1980 to 1987 but granted such status to every comparably situated black employee).

It *may* be that there is no other position identical to Mr. Kilpatrick's within DOE, but the record does not disclose an explanation at this juncture. In any event, because the instant motion is a motion to dismiss rather than a motion for summary judgment, the omission is not fatal at this time. *Cf. Christopher v. Billington,* 43 F.Supp.2d 39, 49 n. 13 (D.D.C.1999) (on motion for summary judgment, Title VII plaintiff failed to establish existence of any discriminatory system, because statistics submitted as to gender breakdown of positions held was "entirely inadequate" in the absence of contextual information showing whether qualified women applied for positions).

Mr. Kilpatrick's allegation of breach in October 1998.[7]

Mr. Kilpatrick filed the instant action on December 31, 1998.[8]

## III. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted tests not whether the plaintiff will prevail on the merits but instead whether or not he has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fed. R.Civ.P. 12(b)(6). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. D.C.,* 73 F.3d 418, 421 (D.C.Cir.1996). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Maljack Prods. v. Motion Picture Ass'n,* 52 F.3d 373, 375 (D.C.Cir.1995). The court need not, however, accept as true the plaintiff's legal conclusions. *See Taylor v. F.D.I.C.,* 132 F.3d 753, 762 (D.C.Cir.1997). In applying the foregoing standard for motions to dismiss, however, the court recognizes that because Title VII is a remedial statute which is generally broadly construed, this matter "should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiff(s) are entitled to no relief under any state of the facts, which could be proved in support of their claims." *Escalera v. New York City Hsg. Auth.,* 425 F.2d 853, 857 (2d Cir.), *cert. den.,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

### B. Exhaustion of Administrative Remedies in EEO Context

#### 1. When an EEO Complaint Must Be Filed

According to the plaintiff's version of the facts, the alleged instances of discrimination and retaliation occurred in 1980, 1990, 1991, 1995 and 1996. *See* Compl. ¶ 14. Statute and regulation specify when a Title VII complainant must contact an EEO counselor, when he must file an EEO complaint with the defendant agency if he is a federal employee, and when he must file an actual charge with the EEOC. First, EEO regulations permit an agency to accept a complaint for events occurring before October 1, 1992 only if "the complainant brought to the attention of the EEO Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of the alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action." [9] *See* 29 C.F.R. § 1613.214(a)(1)(I). Likewise, the pertinent Civil Service Commission regulations require a federal employee, prior to maintaining a civil action, to file a charge of discrimination with the defendant agency within 30 days of "the matter causing him to believe he had been discriminated against." 5 C.F.R. § 713.214(a)(1)(I); *see also DeMedina v. Reinhardt,* 444 F.Supp. 573, 576 (D.D.C.1978). Lastly, Title VII requires the complainant to file a formal charge with the EEOC within 300 days of the alleged discriminatory conduct. *See*

---

**7.** The current record does not disclose the substance of the EEOC's decision.

**8.** On March 31, 2000 the court issued an Order consistent with the terms of the instant Memorandum Opinion, resolving the defendant's outstanding motion to dismiss. Accordingly, the defendant filed its answer to the complaint on April 14, 2000, and the plaintiff filed a "response" to the answer on April 21, 2000.

**9.** For actions occurring after October 1, 1992, a complainant has 45 days to alert an EEO counselor. *See* 29 C.F.R. § 1613.105(a).

14

*Villines v. United Brotherhood of Carpenters,* 999 F.Supp. 97, 103 n. 25 (D.D.C. 1998) (citing 42 U.S.C. § 2000e–5(e)(1)).

"A timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." *Jarrell v. USPS,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (citing *Brown v. GSA,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Moreover, in addition to complying with the time limits for contacting an EEO counselor and filing a charge with the employing agency and the EEOC, a Title VII complainant must also bring suit within the applicable statute of limitations. A plaintiff ignores these requirements at his peril, because "a complainant who is tardy either in filing his discrimination charge with the [EEO] Commission or in subsequently instituting his suit in court ordinarily will be denied a judicial audience." *Shehadeh v. C & P Telephone Co.,* 595 F.2d 711, 717–18 (D.C.Cir.1978) (citing, *inter alia, Stebbins v. Nationwide Mut. Ins. Co.,* 469 F.2d 268, 269 (4th Cir.1972), *cert. den.,* 410 U.S. 939, 93 S.Ct. 1403, 35 L.Ed.2d 606 (1973)).

## IV. DISCUSSION

### A. Defendant Withdraws Contention that 1991 EEO Complaint was Untimely Filed

In August 1990, Mr. Kilpatrick was employed as Chief of the DOE's Complaints Analysis and Conciliation Unit, a position then classified as a grade GS–13. On August 8, 1990, he alleges, DOE sent him a memorandum which declined a request to reclassify his position as a grade GS–14. At that time, the plaintiff was on annual leave from Monday, July 30 through Friday, August 10, 1990. *See* Compl. ¶ 14(a)(1). The plaintiff asserts that he first learned of the memorandum when he returned from annual leave on Monday, August 13, 1990. Accordingly, Mr. Kilpatrick argues that he had until Wednesday, September 12, 1990, to contact an EEO counselor. *See* Declaration of Robert P. Kilpatrick dated April 14, 1999 ("Kilpatrick Decl."), Ex. 2. He did contact the DOE's EEO Specialist on

Monday, September 10, 1990. Therefore, he maintains, he complied with the 30–day time limit then governing discrimination and retaliation claims. *See* Opp'n. to Mot. to Dis. at 3; *see also* 29 C.F.R. § 1613.214(a)(1).

Initially, the DOE contended that all claims arising out of the events covered in the 1991 EEO complaint were time-barred because the plaintiff failed to exhaust his administrative remedies, i.e., failed to contact an EEO counselor within 30 days after the alleged discriminatory act (the August 8, 1990 memorandum). *See* Mot. to Dis. at 6. The DOE's reply brief, however, states, "the Defendant now withdraws the argument that Plaintiff's allegations of discrimination as to the August 8, 1990 denial of promotion [sic] and upgrade were untimely raised at the administrative level. The Defendant reserves the right to raise this argument again in the context of a summary judgment motion." *See* Reply at 2 and n. 1. Accordingly, the court denies without prejudice the defendant's motion to dismiss the plaintiff's claim as to the 1990 memorandum (which claim was asserted in the 1991 EEO complaint) for failure to exhaust administrative remedies.

### B. Claims as to the 1980 Decision are Not Saved from Untimeliness by the Continuing–Violation Theory

The DOE, however, adheres to its contention that "the allegations of discriminatory and retaliatory conduct by defendant *in 1980* were still untimely raised at the administrative level and therefore must be dismissed." *See* Reply at 2. Specifically, the DOE contends, "Plaintiff nowhere alleges that he raised this issue [the defendant's allegedly retaliatory and discriminatory conduct by refusing to reclassify his position in 1980] with an EEO counselor within 30 days of its occurrence. Rather, by simply adding this matter on to his 1991 EEO complaint, Plaintiff waited 10 years to raise this matter in the proper administrative channels." *See id.* at 2–3. The defendant also contends that the

plaintiff's claims as to the 1980 non-reclassification are barred by the general six-year statute of limitations governing civil actions against the federal government. *See id.* at 3 (citing 28 U.S.C. § 2401(a)). For the reasons which follow, the court agrees that the plaintiff's claims as to the DOE's 1980 refusal to reclassify his position are barred by his failure to exhaust administrative remedies and by his failure to comply with the applicable statute of limitations.

As the defendant correctly points out, Mr. Kilpatrick has never alleged that he contacted an EEO counselor within 30 days of when he learned (or reasonably should have learned) of the DOE's 1980 refusal to reclassify his position. Thus, there is no apparent basis for this court to conclude that Mr. Kilpatrick exhausted his administrative remedies as to the 1980 non-reclassification. Similarly, Mr. Kilpatrick has never alleged that he learned (or reasonably should have learned) of the 1980 non-reclassification less than six years prior to filing the instant complaint. Thus, there is no apparent basis for this court to conclude that Mr. Kilpatrick filed his claim as to the 1980 decision within the six-year statute of limitations governing actions against the United States.

Therefore, for this court to entertain Mr. Kilpatrick's claims as to the 1980 non-reclassification, the court must be persuaded that the 1980 event is part of the same "continuing violation" as later allegedly wrongful events for which he *did* satisfy the exhaustion requirement and the statute of limitations. In addition to the 1980 decision, Mr. Kilpatrick alleges discrete manifestations or incidents of discrimination/retaliation in 1990, 1991, 1995 and 1996. Because Mr. Kilpatrick filed the complaint in this action on December 31, 1998, the 1990 and 1991 events would presumptively fall outside the six-year statute of limitations. Therefore, the 1980 decision will be barred as untimely unless the court concludes that it was part of the same continuing violation as the allegedly

discriminatory/retaliatory events in 1995 and 1996—fifteen and sixteen years later. The court declines to do so. Therefore, as discussed below, the court dismisses the plaintiff's claims—both discrimination and retaliation—as to the DOE's 1980 decision not to reclassify his position.

The plaintiff contends that there is a continuing violation here based on the DOE's discriminatory system of promoting employees. Specifically, the plaintiff contends that DOE has carried out a pattern and practice of discrimination by denying job level upgrades and promotions to minority employees in its EEO office. *See* Compl. ¶ 14. The Plaintiff argues that the pattern and practice began in 1980, when DOE failed to reclassify his position, and continued through the present. *See* Opp'n to Mot. to Dis. at 8. Consequently, Plaintiff maintains the DOE's discriminatory practice was continuous. *Id.* The court disagrees.

If a plaintiff can establish a continuing violation of Title VII which sufficiently links events for which he filed a timely administrative charge (or complied with statute of limitations) with events for which he did not file a timely administrative charge (or comply with the statute of limitations), the latter claims will not be time-barred. *See Shepard v. Adams*, 670 F.Supp. 22, 24 (D.D.C.1987); *see, e.g., Hatcher–Capers v. Haley*, 786 F.Supp. 1054, 1060 (D.D.C.1992). The theory of continuing violation must be guardedly employed, however, because "within it are seeds of destruction of statutes of limitation in Title VII cases." *See Bishopp v. District of Columbia*, 788 F.2d 781, 789 (D.C.Cir.1986); *Cones v. Shalala*, 945 F.Supp. 342, 345 (D.D.C.1996). For one thing, "an untimely suit 'cannot be revived by pointing to effects within the limitations period of unlawful acts that occurred earlier.'" *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.Cir.1997) (quoting *Dasgupta v. University of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir.1997)).

The question of whether a violation is continuing must be addressed on a case-by-case basis. *See Delaware State College v. Ricks,* 449 U.S. 250, 258 n. 9, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). To assert a continuing violation, the plaintiff must demonstrate either a series of related discriminatory acts, of which one or more fall within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period. *See Palmer v. Kelly,* 17 F.3d 1490, 1495 (D.C.Cir.1994) (internal citations omitted); *Hunt v. D.C. Dep't of Corrections,* 41 F.Supp.2d 31, 35 (D.D.C.1999). To proceed under the series-of-related-acts rubric, a plaintiff's evidence must show "a continuous chain" of discriminatory acts. *See Macellaro v. Goldman,* 643 F.2d 813, 815 (D.C.Cir.1980); *see, e.g., Lucero–Nelson v. WMATA,* 1 F.Supp.2d 1, 4–5 (D.D.C.1998) (employee made out continuing violation where first alleged incident of discrimination took place in October 1989, most recent incident of sexual harassment took place in September 1991 and employer ignored plaintiff's requests to stop the harassment in December 1991, during the 180–day limitations period).

As a threshold requirement, in order to save claims which would otherwise be untimely, the plaintiff must properly allege the continuing violation theory in both the administrative complaint and the complaint before the court. *See Albritton v. Kantor,* 944 F.Supp. 966, 971 (D.D.C. 1996) (Urbina, J.); *Graham v. Adams,* 640 F.Supp. 535, 538 (D.D.C.1986). Because administrative complaints are drafted by laypersons, who are generally unaccustomed to preparing legal pleadings, administrative complaints should be read liberally for this purpose. *See Caliendo v. Bentsen,* 881 F.Supp. 44, 47 (D.D.C.1995). The court finds that Mr. Kilpatrick adequately alleged the continuing-violation theory in both the instant complaint and

his 1991 EEO complaint.[10] *See* Mot. to Dis., Ex. 3 (attaching "Allegations/Issues Presented to EEO Counselor", Feb. 11, 1991).

Therefore the court turns to the first element of a valid continuing-violation claim, whether an actual violation of Title VII occurred within the limitations period. *See Palmer,* 17 F.3d at 1496 (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). The emphasis is not placed on mere continuity; rather, the critical question is whether any present violation exists. *See United Air Lines,* 431 U.S. at 558, 97 S.Ct. 1885; *Palmer,* 17 F.3d at 1496; *see, e.g., Macellaro v. Goldman,* 643 F.2d 813, 816 (D.C.Cir.1980) (employee alleged age discrimination after being assigned to GS–14 position in wake of RIF which removed him from GS–15 position; summary judgment for defendant was proper because employee failed to allege wrongful act postdating effective date of ADEA and failed to show the current violation needed to sue for pre-Act events under continuing-violation theory). For the purposes of the limitation period, however, a series of incidents should be treated as a continuing violation only if, when viewed together, they amount to a policy or "pattern or practice" of discrimination. *See Havens Realty,* 455 U.S. at 380–81 & n. 23, 102 S.Ct. 1114; *see, e.g., Macklin v. Spector Freight Sys., Inc.,* 478 F.2d 979, 983, 994 & n. 30 (D.C.Cir.1973) (racially discriminatory hiring system in place for six years established continuing violation); *cf. Local Lodge No. 1424 v. NLRB,* 264 F.2d 575, 579 (D.C.Cir.1959) (in case regarding enforcement of labor contract signed by union which did not represent the requisite majority of employees, there was a continuing violation "repeated anew each time" the contract's clauses were enforced). For instance, this court has found a continuing violation when an employer

---

**10.** The current record does not include Mr. Kilpatrick's 1997 EEO complaint, so the court cannot evaluate whether he adequately al- leged a continuing violation therein. It is sufficient that he adequately alleged the theory in his 1991 EEO complaint.

followed a systematic discriminatory policy with respect to a class of employees and when an employer engaged in a persistent practice of issuing false, discriminatory references to prospective employers of a former employee. *See Stoller v. Marsh,* 682 F.2d 971, 974, 976 (D.C.Cir.1982) (citing *Thompson v. Sawyer,* 678 F.2d 257, 282, 285, 289 (D.C.Cir.1982)).

If the plaintiff alleges facts indicating that the various decisions complained of were made by the same decisionmakers, that will tend to support finding the nexus between the decisions necessary for a continuing violation. *See Albritton v. Kantor,* 944 F.Supp. 966, 971–72 (D.D.C.1996) (finding continuous violation where, *inter alia,* plaintiff's applications for promotion were all denied by same review board). Conversely, if the plaintiff fails to allege that the complained-of decisions were made by the same decisionmakers, that may tend to undermine the case for a continuing violation. *See Lempres v. CBS,* 916 F.Supp. 15, 22 (D.D.C.1996) (Urbina, J.) (declining to find that employer's offer to place plaintiff in inferior position was part of continuing violation with employer's failure to assure plaintiff that there would be some permanence if she returned to former position, because different supervisors were involved in the two incidents); *Webb,* 864 F.Supp. at 183 (rejecting continuing-violation theory where plaintiff was denied more than 100 promotions for different positions and selecting officials differed for each position); *Scott,* 469 F.Supp. at 25 (rejecting continuing-violation theory for denials of promotion for different jobs by different supervisors but sustaining theory as to non-promotions for which plaintiff adequately alleged the decision was made by same supervisor). Here Mr. Kilpatrick has not alleged that the decisionmakers were the same for the various widely separated decisions which he challenges.

Mr. Kilpatrick does allege that the various DOE decisions shared common motivations—retaliation and racial discrimina-tion. A series of discriminatory actions against the same employee do not necessarily constitute a continuing violation, however, merely because the actions were allegedly motivated by the same type of unlawful animus. *See Milton v. Weinberger,* 645 F.2d 1070, 1072 n. 3 (D.C.Cir. 1981) (no "continuing violation" when female plaintiffs unsuccessfully applied for position of GS–14 EEO Officer on six occasions between 1972 and 1977, even though gender was allegedly the motivating factor in each of the decisions not to hire them); *Lempres,* 916 F.Supp. at 22 (citing *Stoller v. Marsh,* 682 F.2d 971, 975 (D.C.Cir. 1982)).

On the other hand, in favor of Mr. Kilpatrick's continuing-violation theory, his allegations that the DOE has maintained a discriminatory system of position classification are similar to a type of allegations which have been held potentially eligible for continuing-violation treatment. "Challenges to discriminatory *promotion* policies 'are typical of those falling within the ambit of the continuing-violation principle.'" *Palmer v. Kelly,* 17 F.3d 1490, 1496 (D.C.Cir.1994) (quoting *Shehadeh v. C & P Telephone Co.,* 595 F.2d 711, 724 (D.C.Cir. 1978) (emphasis added)). Nonetheless, for other reasons described below, the continuing-violation doctrine does not operate to save Mr. Kilpatrick's 1980 claims from dismissal for untimeliness and failure to exhaust.

**No Continuing Violation Where Unlawful Character of Action(s) was Clear Prior to Limitations Period.** The D.C. Circuit has made clear that a plaintiff may not avail himself of a continuing-violation theory to save untimely (in this case, also unexhausted) claims unless he lacked notice or awareness, until after the limitations period, that the complained-of actions were unlawful:

> For statute of limitations purposes, a continuing violation is "one that could not reasonably be expected to be made the subject of a lawsuit when it first occurred because its character as a vio-

lation did not become clear until it was repeated during the limitations period", [citation omitted], typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.

. . .

*Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.Cir.1997) (quoting *Dasgupta*, 121 F.3d at 1139); *see also Stoller v. Marsh*, 682 F.2d 971, 974 (D.C.Cir.1982) (under Title VII, if employee did not know or have reason to know that employment decision was discriminatory in nature, time limits for filing administrative complaint may be tolled). In *Taylor v. FDIC*, for example, former Resolution Trust Corporation (RTC) employees alleged that their employer had retaliated against them, in violation of a whistleblower act, for making protected disclosures. Specifically, the employees alleged that their employer had reassigned them to a less desirable department called "Special Projects" and then, in the years following the reassignment, isolated them in "an occupational Siberia" by misdirecting their mail, giving them poor telephone service and deliberately assigning them unsuitable work. *See Taylor*, 132 F.3d at 765. As to some of the allegedly retaliatory acts, the employees' claims had not been timely filed under the applicable statute of limitations, so they contended that the employer's later acts were part of the same continuing violation as the earlier acts. The district court declined to apply the doctrine, and the D.C.

Circuit affirmed. The Circuit Court explained, "*[T]he banishment of [the two employees] to Special Projects, as they allege it, amply manifested itself as a possible retaliation from the start.*[11] Just as the continuing low pay entailed by a demotion cannot toll the statute of limitations covering the demotion, so continuing hardship in Special Projects cannot qualify as . . . [part of the] retaliation [which took place within the limitations period]." *Taylor*, 132 F.3d at 765 (emphasis added).

Similarly, Mr. Kilpatrick cannot avail himself of the continuing-violation theory to save his unexhausted, untimely claim as to the alleged 1980 discrimination (the DOE's allegedly discriminatory and retaliatory failure, in May 1980, to raise the "grade" of the position which he occupied). According to Mr. Kilpatrick's own account of the facts, by May 1980 he already believed that the DOE systematically discriminated against non-white employees and more specifically, that this discrimination took the form of deliberately inappropriate grading of positions. After all, by that time he had already issued a report expressing his opinion that the DOE was guilty of just that misconduct—intentionally refusing to assign appropriate grades to positions occupied by black employees. In other words, in the language of the D.C. Circuit, the DOE's 1980 failure to reclassify Mr. Kilpatrick's position "amply manifested itself as a possible retaliation from the start." [12] *See Taylor*, 132 F.3d at 765.

---

**11.** The Fifth Circuit employs a very similar three-part test to determine whether a continuing violation has been sufficiently pled. The third prong of that test inquires, "Does the act have the degree of permanence which would trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" *Berry v. Board of Supervisors of LSU*, 715 F.2d 971, 981 (5th Cir.1983) (*cited with approval in Shepard v. Adams*, 670 F.Supp. 22, 24 (D.D.C.1987)).

**12.** Some courts make a distinction between a plaintiff's realization that he is being discriminated or retaliated against, and the realization that he has a duty to file a charge with the EEOC and bring suit in court within limited time frames. *See Lowery v. Carrier Corp.*, 953 F.Supp. 151, 158 (E.D.Tex.1997). The court need not decide whether to adopt this distinction, because the court finds that Mr. Kilpatrick, as a person employed in the equal-opportunity employment area for over thirty years, knew or reasonably should have known that the law limited how long he could wait to file charges with the EEOC and then bring suit in court. *See Villines v. United Brotherhood of Carpenters*, 999 F.Supp. 97, 103 (D.D.C.1998) (citing aforementioned distinc-

This is consistent with this court's well-settled approach to the continuing-violation theory. *See Keith v. Duffey,* 77 F.Supp.2d 46, 49 (D.D.C.1999) ("[E]ven if the facts of this case could [otherwise] support a finding of a 'continuing violation', the Court would hesitate to extend such equitable relief to plaintiff when he demonstrated knowledge of the existence of a potential claim in his 1989 letter accepting [a certain position] but failed to act at that time"); *Childers v. Slater,* 44 F.Supp.2d 8, 18 n. 8 (D.D.C.1999) (Urbina, J.) (refusing to apply continuing-violation doctrine where the incidents complained of were "determinative decisions which would have alerted the plaintiff to the need to engage the administrative process"); *Bettucci v. United States,* 14 F.Supp.2d 45, 52–53 (D.D.C.1998) (affirming agency's grievance board's refusal to consider untimely claims under continuing-violation theory where plaintiff had "failed to set forth any evidence establishing that he was unaware of the ground for the claims ... or unable to discover them through reasonable diligence."); *Harvey v. District of Columbia,* 949 F.Supp. 878, 881 (D.D.C.1996) (Title VII sexual-harassment plaintiff could not avail herself of continuing-violation theory where she failed to report alleged rape to supervisors for one year and failed to file charge with EEOC for two years); *contrast Macklin v. Spector Freight Systems,* 478 F.2d 979, 994 (D.C.Cir.1973) (although Title VII cause of action ordinarily accrues when wrong is committed, plaintiff truck driver might have been "deceived for some time into believing his difficulties in obtaining over-the-road employment resulted merely from a purportedly neutral contract interpretation and from the fortuity of residing in a city ... where there was" insufficient traffic to justify the defendant employer's setting up an over-the-road terminal). In short, "[a] claim that is continuing only because a putative plaintiff knowingly fails to seek relief earlier [13] is exactly the sort of claim Congress intended to bar with the statute of limitations period." *Villines v. United Brotherhood of Carpenters,* 999 F.Supp. 97, 102 (D.D.C. 1998) (citing *Sabree v. United Brotherhood,* 921 F.2d 396, 402 (1st Cir.1990)).

Lastly, Mr. Kilpatrick's untimely, unexhausted claim as to the 1980 decision cannot be saved by any notion that the *effects* of that decision continued into the limitations period (so as to avert statute-of-limitations-based dismissal), nor by the contention that the 1980 decision continued to manifest itself in the form of later actions as to which timely administrative charges *were* filed (so as to avert dismissal for failure to exhaust). "It is well settled that 'effects' alone are not sufficient to defeat a time bar, even under a 'continuing violations' theory of liability." *Palmer v. Barry,* 894 F.2d 449, 453 (D.C.Cir.1990) (citing *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) and *Milton v. Weinberger,* 645 F.2d 1070 (D.C.Cir.1981)); *see also Pender v. National Railroad Passenger Corp.,* 625 F.Supp. 252, 255 (D.D.C.1985) (continuing impact of demotion over a year ago did not establish present violation necessary to avoid statute of limitations via continuing-violation theory).

Therefore, Mr. Kilpatrick has not satisfied the conditions needed for this court to apply the continuing-violation doctrine to his claims as to the 1980 non-reclassifica-

---

tion, court concluded that where plaintiff had made several complaints to shop steward and her employer's personnel manager about the alleged discrimination, "[t]his fact alone demonstrates that she ha[d] knowledge of her right to oppose unlawful conduct" and the need to do so in a timely fashion).

**13.** "In an employment discrimination case, the plaintiff has the burden to plead and prove any equitable reasons for failing to meet the requirement of bringing the Title VII complaint to the attention of the agency's EEO counselor within the mandated time frame." *Albritton,* 944 F.Supp. at 971 (citing *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94–95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

tion.[14]  Accordingly, the court will dismiss Mr. Kilpatrick's claims of discrimination and retaliation as to the 1980 event for failure to exhaust administrative remedies, and for failure to seek judicial relief on those claims within the limitations period.

## C. Claims for Retaliation in 1990s Dismissed for Lack of Causal Relation to 1979 Protected Activity

■ The DOE also moves to dismiss retaliation claims—*not* discrimination claims—arising out of the events of 1990, 1991, 1995 and 1996.  Specifically, the DOE contends that the plaintiff has not made out a *prima facie* case that the events of 1990–1996 are causally related to the protected activity (the report he issued back in 1979).  The court agrees with the defendant and dismisses the plaintiff's claims that the DOE's 1990–1996 conduct was in retaliation for protected activity which took place *eleven to seventeen years* earlier.[15]

Under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff is required first to establish a *prima facie* case of retaliation by demonstrating that "(1) the plaintiff engaged in protected activity which was known by the alleged retaliator; (2) the plaintiff was subjected to adverse action by the employer; and (3) there existed a causal link between the adverse action and the protected activity." *See Thomas v. NFL Players Ass'n*, 131 F.3d 198, 202 (D.C.Cir.1997); *see, e.g., Passer v. American Chem. Soc'y*, 935 F.2d 322, 331

(D.C.Cir.1991) (cancellation of major public symposium in employee's honor could be an act of retaliation if plaintiff showed that he engaged in activity protected by the Age Discrimination in Employment Act, and the cancellation was causally related to the exercise of protected rights).

*The Plaintiff's 1979 Report was a Protected Activity.*  As stated above, in order for the plaintiff to establish a *prima facie* claim of retaliation he must first prove that he engaged in a protected activity.  Assuming *arguendo* that the plaintiff indeed issued a report alleging racial discrimination within the DOE and that the DOE was aware of this report, the court finds that issuance of the report qualifies as a protected activity.  *See Thomas v. NFL Players Ass'n*, 131 F.3d 198, 202, 205 (D.C.Cir.1997) (plaintiff engaged in protected activity by participating in two conversations with EEO officer in which she raised the issue of discrimination against women and African–Americans in promotion at the NFLPA, and by distributing a memo to EEO officer).  The court notes that Mr. Kilpatrick's report qualifies as a protected activity without regard to the accuracy or veracity of the report's contents.  *See Womack v. Munson*, 619 F.2d 1292, 1298 (8th Cir.1980) (black investigator's allegation that prior employer required deputies to beat black prisoners was protected activity, even if allegation was unwarranted).

*The Plaintiff Has Alleged an Adverse Personnel Action.*  While this circuit has not exhaustively defined what constitutes

14.  *See also Webb v. D.C.*, 864 F.Supp. 175, 183 (D.D.C.1994) ("This court has held that denials of promotion and refusals to hire are too isolated to constitute a continuing violation."); *cf. Milton v. Weinberger*, 645 F.2d 1070, 1076, 1077 (D.C.Cir.1981) (each female plaintiff was GS–13 EEO Officer in 1971, and applied for promotions to GS–14 positions between 1972 and 1977; absent allegations sufficiently connecting these remote claims to the ones for which timely complaints were filed, there was no continuing violation and district court properly time-barred those per-

sonnel actions for which the plaintiffs did not file a timely complaint).

15.  The DOE has not contended that the plaintiff has failed to satisfy the causation element of his claim that DOE's *1980* decision not to reclassify his position was made in retaliation for his 1979 protected activity.  *See* Reply at 11 n. 5.  This does not save that claim, however, because the court dismissed the retaliation *and* discrimination claims as to the 1980 decision for failure to exhaust and failure to comply with the statute of limitations.

an adverse personnel action under Title VII, *see Keith v. Duffey,* 77 F.Supp.2d 46, 50 (D.D.C.1999), "courts applying Title VII have consistently focused on ultimate employment decision such as hiring, granting leave, promoting, and compensating . . . [and not] interlocutory or intermediate decisions having no immediate effect upon employment decisions." *Taylor v. FDIC,* 132 F.3d 753, 764 (D.C.Cir.1997); *see also Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997); *Rowland v. Riley,* 5 F.Supp.2d 1, 3 (D.D.C.1998). This court has recognized that "an employee need not be fired, demoted or transferred to make out a case of retaliation." *Gary v. WMATA,* 886 F.Supp. 78, 90 (D.D.C.1995). An employment decision does not rise to the level of an actionable adverse action, however, unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage. *See Childers v. Slater,* 44 F.Supp.2d 8, 19 (D.D.C.1999).

The plaintiff has asserted that DOE improperly refused to reclassify his position to a grade GS–14, thereby effectively failing to promote him.[16] *See Brown v. Brody,* 199 F.3d 446, 455 (D.C.Cir.1999) (involuntary transfers, negative performance evaluations, and refusals of transfer applications are "adverse personnel actions" covered by Title VII); *Hayes v. Shalala,* 902 F.Supp. 259, 266–67 (D.D.C.1995) ("a less than Outstanding performance rating," in the context of a series of other alleged retaliatory conduct by an employer, constitutes an "adverse action" under Title VII); *accord Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981) (courts applying Title VII have consistently focused on "ultimate employment decisions such as hiring, granting leave, discharging, *promoting,* and compensating . . . [and not] interlocutory or mediate decisions having no immediate effect upon employment conditions . . . ."). The court treats the DOE's decisions not to "re-grade" Mr. Kilpatrick's position as adverse personnel actions within the intendment of Title VII. Thus, Mr. Kilpatrick satisfies two of the three elements of a *prima facie* case of retaliation.

Mr. Kilpatrick's retaliation claims fail, however, because he has not demonstrated causation, the third element of a *prima facie* case of retaliation.[17] Mr. Kilpatrick must make a *prima facie* showing that the adverse actions would not have occurred "but for" the protected activity. *See Gregg v. Hay–Adams Hotel,* 942 F.Supp. 1, 8 (D.D.C.1996). Sometimes the employee may establish the causal-connection component of the *prima facie* case merely by showing that the employer had knowledge of the employee's protected activity and took the adverse personnel action shortly after that activity. *See Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *Hazward v. Runyon,* 14 F.Supp.2d 120 (D.D.C.1998). As mentioned *supra,* the plaintiff alleges that DOE retaliated against him based on a report which he issued at some unspecified time prior to 1980, which charged that minority employees of DOE were being "disproportionately downgraded" in comparison to their white counterparts. *See* Compl. ¶ 14.[18] The

---

**16.** The "promotion" to which the plaintiff refers may be better described as a position "upgrade," specifically, the upgrade of his position from grade GS–13 to grade GS–14. *See* Compl. ¶ 14; *cf. Lutes v. Goldin,* 62 F.Supp.2d 118 (D.D.C.1999).

**17.** In determining whether the plaintiff has satisfied the causation element of a *prima facie* case of retaliation, the contention that the various adverse actions are part of a continuing violation is not directly relevant. "[T]he 'continuing violation' analysis is used 'only in the context of a challenge to the timeliness of a cause of action' in relation to the statute of limitations." *Tomasello v. Rubin,* 920 F.Supp. 4, 8 n. 8 (D.D.C.1996) (Urbina, J.) (quoting *Taylor v. Western & Southern Life Ins. Co.,* 966 F.2d 1188, 1196 (7th Cir.1992)).

**18.** This allegation is not entirely clear, but presumably the plaintiff means that the DOE deliberately assigned inappropriately low "grades" to positions which it knew were held by non-white employees.

first allegedly retaliatory action identified by the plaintiff is the DOE's 1980 "failure" to re-grade the position which he occupied. However, the court has already indicated that it will dismiss Mr. Kilpatrick's claims as to the 1980 decision for failure to exhaust administrative remedies and comply with the statute of limitations. Consequently, the court begins its retaliation analysis with the next instance of alleged retaliation: the DOE's refusal, ten years later (in August 1990), to "re-grade" Mr. Kilpatrick's position as he thought appropriate. *Id.* ¶ 14(b). According to the plaintiff, the DOE did reclassify the position of Chief of the Evaluation/Affirmative Action and Data Analysis Unit, in February 1991. *Id.* The plaintiff then held a grade GS–13 position as Acting Chief of the Complaint Analysis and Conciliation Unit in 1980, a position which he maintains should have been classified as a grade GS–14. *Id.* Plaintiff also asserts that DOE further retaliated by excluding him from meetings and briefings involving his duties and by improperly lowering his 1995 performance rating.

The final adverse act alleged by plaintiff occurred in November 1996, when DOE decided not to select him as Director of the Employment Opportunity Group. *Id.* The plaintiff alleges that there is a causal nexus between the 1979 protected activity and these far-flung events in 1980, 1990 and 1996 because all three were done in retaliation. *See* Opp'n to Mot. to Dis. at 9. DOE responds that a lapse of ten years or more precludes a finding that there was a causal connection between the plaintiff's protected activity (the 1979 report) and any alleged retaliation in the 1990's. *See* Mot. to Dis. at 15. The plaintiff retorts that under Third Circuit decisions, the causal nexus is more important than temporal proximity, and the absence of immediacy between the cause and effect does not necessarily disprove causation. *See* Opp'n to Mot. to Dis. at 9 (citing *Kachmar v. SunGard Data Sys.,* 109 F.3d 173, 177 (3d Cir.1997) *et al.*). The court concludes that under the deci-

sional law of *this* Circuit, the defendant has the better argument on this score.

This circuit has found that temporal proximity may sometimes be sufficient to establish the requisite causal connection for retaliation claims. *See Gleklen v. Democratic Congressional Campaign Committee,* 199 F.3d 1365, 1368 (D.C.Cir. 2000); *see also Cones v. Shalala,* 199 F.3d 512, 521 (D.C.Cir.2000) (fact that only a couple of weeks elapsed between plaintiff's discrimination complaints and refusal to consider the plaintiff for a position was sufficient to infer causal connection); *Chen v. Gen.,* 821 F.2d 732, 739 (D.C.Cir.1987) (causation can be inferred when adverse action follows "shortly after" protected activity); *Kalekiristos v. CTF Hotel Management Corp.,* 958 F.Supp. 641, 665 (D.D.C.1997) (temporal proximity of remark to adverse employment decision is a factor to be considered); *Batson v. Powell,* 912 F.Supp. 565, 577, 579 (D.D.C.1996) (where two employees were terminated in May and June 1994, respectively, at least one year after they engaged in a protected activity the filing of an EEO complaint, the Court assumed *arguendo* that the times were proximate enough to show causation, but noted that that outcome was not mandated); *accord Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir. 1998) (noting that "very little evidence of a causal connection is required to establish a prima facie case" and that mere temporal proximity is sufficient to demonstrate causality).

Conversely, however, it is well established that the greater the time that elapses between the protected activity and the alleged acts of retaliation, the more difficult it is to justify an inference of causal connection between the two. *See Saunders v. DiMario,* 1998 WL 525798 *4, *5 (D.D.C.1998) (plaintiff failed to establish causal nexus necessary for retaliation claim where the allegedly retaliatory non-hiring occurred eight to ten years after his filing of an EEO complaint); *accord Dowe v. Total Action Against Poverty,* 145 F.3d

653, 657 (4th Cir.1998) (a seven-month time lapse "negates any inference that a causal connection exists between the filing of the EEO complaint and plaintiff's termination"); *Harris v. Rector Bd. of Visitors of UVA*, 1996 WL 199551, *2 (4th Cir.1996) (distinct court properly dismissed retaliation claim where complaints occurred thirty-five months prior to employee's declined appointment of a new position); *Clark v. Chrysler Corp.*, 673 F.2d 921, 930 (7th Cir.1982), *cert. den.*, 459 U.S. 873, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982) (absent other evidence of causation, a sufficiently great lapse of time warrants judgment for the defendant as a matter of law on retaliation claim).

While temporal proximity alone is not always dispositive on a retaliation claim,[19] in this case the lapse of time between the protected activity and the various allegedly discriminatory events is well beyond the range where the D.C. Circuit and this court have tended to find a *prima facie* case of causation. For instance, this court has held that a lapse of even two years between the filing of an EEO charge and the alleged retaliatory action can negate an inference of retaliatory motive. *See Townsend v. Washington Metropolitan Area Transit Authority*, 746 F.Supp. 178, 187 (D.D.C.1990); *see also Devera v. Adams*, 874 F.Supp. 17, 21 (D.D.C.1995) (eight-month lapse between plaintiff's discrimination charge and employer's letter of insubordination is not strongly suggestive of a causal link); *Dhuria v. Trustees of UDC*, 827 F.Supp. 818 (D.D.C.1993) (granting judgment as matter of law to defendant on a retaliation claim because of the time lapse between filing EEO complaint and receiving poor classroom teaching evaluations). Moreover, in the circumstances of this case, the plaintiff's attempt to make a *prima facie* case of causation cannot be salvaged by his allegation that the DOE's refusals to reclassify his position were part of a continuing course of discriminatory conduct rather than discrete events.

In light of these precedents, and in the absence of other evidence sufficiently linking the temporally isolated events with the 1979 protected activity,[20] the court finds

---

**19.** Indeed, the court may consider evidence other than the temporal proximity between the protected activity and the alleged retaliation. Specifically, the court may consider evidence suggesting that the decisionmakers responsible for the alleged retaliation harbored discriminatory animus against the employee's "protected class" or harbored a desire to "get back at" the particular employee for his exercise of some protected right. For example, in a racial-discrimination case such as the case at bar, the court may be likelier to find a *prima facie* showing on causation when the employee has alleged that the relevant decisionmakers made racist remarks—particularly if the remarks were made in connection with or close in time to the allegedly retaliatory decisions. *See, e.g., Simms v. United States Government Printing Office*, 87 F.Supp.2d 7 (D.D.C.2000) (court considered supervisor's alleged racist comments as evidence of racial discrimination and retaliation, but found the comments were insufficient to make out a *prima facie* case). Mr. Kilpatrick, however, has not alleged that the DOE officials responsible for the misgrading of his position and other adverse acts made any remarks indicative of racial or retaliatory animus.

**20.** The court notes that some of the allegedly retaliatory acts deal with a different aspect of the plaintiff's employment than the other acts. Specifically, the DOE's rejection of requests to reclassify the position which Mr. Kilpatrick held go to the proper grading of his position. By contrast, lowering Mr. Kilpatrick's 1995 performance rating goes to the fairness and accuracy of his performance assessment, while excluding him from meetings related to his job duties goes to interference with his ability to do his job and, perhaps, his ability to train and improve his abilities.

The court does not hold that employer actions *must* relate to the same aspect of employment in order to be considered related to each other for purposes of the causation prong of a retaliation claim. Nonetheless, the fact that allegedly connected incidents of discrimination/retaliation affected different aspects of a plaintiff's employment may be a factor weighing against finding a *prima facie* case of causation. *See Keith v. Duffey*, 77 F.Supp.2d 46, 49 (D.D.C.1999) (Friedman, J.) (finding that plaintiff had not provided evidence to support conclusion that nexus existed between acts of alleged discrimination in 1989 and acts in 1994 because, *inter alia,*

that, as a matter of law, the plaintiff has not satisfied the causation element of a *prima facie* case of retaliation. Accordingly, the court will grant the motion to dismiss the plaintiff's retaliation claims.

### D. DOE's Alleged Untimely Handling of 1997 EEO Complaint is Not an "Adverse Employment Decision" under Title VII

■ The last allegation subject to the instant motion to dismiss is Mr. Kilpatrick's allegation that DOE discriminated and retaliated when it failed to issue a final agency decision on his 1997 EEO complaint within 60 days of its filing date. See Compl. ¶ 16. While the D.C. Circuit has not specified the exact contours of what constitutes an adverse personnel action, it is clear that the action complained of must have some "negative consequences with respect to the plaintiff's employment." *See Jolly v. Listerman*, 672 F.2d 935, 953 (D.C.Cir.1982); *Childers v. Slater*, 44 F.Supp.2d 8, 19 (D.D.C.1999); *Brown v. Bentsen*, 921 F.Supp. 1, 2 (D.D.C.1995); *accord Norman v. Rubin*, 1999 WL 739433, *4, 5 (4th Cir.1999) (citation omitted); *Dachman v. Shalala*, 46 F.Supp.2d 419 (D.Md.1999) (systematic retaliation in form of reduction of job duties, disciplinary action, negative personnel reports and required remedial training constituted adverse employment action as a matter of law). Under the circumstances here, the agency's failure to issue a final decision on the plaintiff's 1997 EEO complaint within 60 days had no discernible "negative con-

sequences" for his employment. *See Jolly*, 672 F.2d at 953. In the absence of a timely final decision by the agency, the plaintiff had the right to "file a civil action in the appropriate district court after 180 days from the date of filing and individual or class complaint if . . . a final decision has not been issued." 29 C.F.R. § 1614.408(b).

Accordingly, the court concludes that the DOE's untimely decision on Mr. Kilpatrick's 1997 EEO complaint does not constitute an actionable adverse personnel action within the meaning of Title VII. The court will thus dismiss the claim that the allegedly dilatory handling of Mr. Kilpatrick's 1997 EEO Complaint constituted racial discrimination and retaliation.

## V. CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part the defendant's motion to dismiss portions of Count II. Specifically, the court will dismiss ¶¶ 14(a–c) of Count II to the extent that they allege retaliation. The court will deny the motion to dismiss without prejudice, however, as to the portion of Count II which alleges discrimination arising out of the events described in the 1991 EEO complaint, because the defendant withdrew its argument that that complaint was untimely filed. Lastly, the court will dismiss the portion of Count II (¶ 16) alleging that the DOE discriminated and retaliated by untimely processing his 1997 EEO complaint.

---

"[t]he two actions . . . related to different aspects of plaintiff's employment (salary versus duties). . . ."); *Childers v. Slater*, 44 F.Supp.2d 8, 18 n. 8 (D.D.C.1999) (Urbina, J.) (refusing to find continuing violation because, *inter alia*, "the allegations here do not involve the same types of reprisal").

It should also be noted that the type of proof required to sustain an allegation of position misgrading is different from the type of proof required to sustain an allegation of discrimination in the promotion process. *See Mayfield*, 669 F.Supp. at 1128. Specifically, in establishing a *prima facie* case of disparate treatment where the alleged wrong is wrong-

ful *nonpromotion*, the plaintiff must show at a minimum that he was qualified for the position. *See Lu v. Woods*,.717 F.Supp. 886, 892 (D.D.C.1989). By contrast, the question of whether *a position* is assigned the proper grade focuses not on any particular employee's qualifications, but on the type and degree of responsibilities which the position entails. *Cf. Mayfield v. Meese*, 669 F.Supp. 1123, 1127–28 (D.D.C.1987) (declining to find misgrading of positions was part of continuing violation with allegedly discriminatory assignment and promotion practices, and latter claims were time-barred for failure to exhaust administrative remedies).

An Order directing the parties in a fashion consistent with this Memorandum Opinion was separately issued on March 31, 2000. This Opinion is executed and issued this 27th day of April 2000.