**Robert Paul KILPATRICK, Plaintiff,**

v.

**Roderick PAIGE, Secretary Of Education, Defendant.**

**No. Civ.A. 98–3180(RMU).**

United States District Court, District of Columbia.

March 25, 2002.

Roberta Y. Wright, John W. Davis, Washington, DC, for Plaintiff.

Peter Blumberg, Washington, DC, for Defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This lawsuit combines a Title VII race discrimination claim with a contract claim. The case is before the court on the parties' cross-motions for summary judgment. The plaintiff, Robert Paul Kilpatrick, seeks partial summary judgment for his breach-of-contract claim against the defendant, Roderick Paige, named in his official capacity as Secretary of the U.S. Department of Education ("DOE"). The plaintiff does not seek summary judgment on his Title VII race discrimination claims made pursuant to Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* The defendant seeks summary judgment on all claims asserted in the plaintiff's complaint. Upon consideration of the parties' submissions and the relevant law, the court denies the plaintiff's motion for partial summary judgment and grants the defendant's motion for summary judgment as to the entire case.

## II. BACKGROUND

### A. Factual Background

The plaintiff is an African–American man who has worked for DOE or its predecessor, the U.S. Department of Health, Education and Welfare, since 1968. *See* Compl. ¶ 3. Shortly before 1980, the plaintiff, in his capacity as a member of the Equal Employment Opportunity (EEO) staff within DOE, reported that black and other minority employees of DOE were being "downgraded" disproportionately compared to white DOE employees, based on an investigation that the plaintiff undertook in response to an administrative complaint. *See id.* ¶ 14(a)(2).

In April 1991, the plaintiff filed an administrative complaint alleging that the defendant "employed a position classification system that had the continuing effect of denying him promotions since 1980." *See id.* ¶ 6. In December 1996, when the plaintiff was not selected for the position of Director of DOE's EEO Group, the plaintiff sought EEO counseling as a prerequisite for filing another administrative complaint of discrimination based on race and sex. *See id.* On September 9, 1997, after receiving a "Notice of Right to File," the plaintiff filed a formal administrative complaint against his employer. *See id.*

The plaintiff alleges that he reached a settlement with the defendant regarding his two administrative complaints in April 1997, whereby the parties agreed that the plaintiff would be promoted retroactive to 1980 and would receive back-pay with interest, pay raises, and merit-based pay increases. *See id.* ¶¶ 7–9. The plaintiff further alleges that while the settlement was going through the defendant's "clearance process," the defendant asked the plaintiff to accept a smaller amount of interest on his back-pay. *See id.* ¶¶ 10–12. The plaintiff refused and, thus, the parties did not execute a formal agreement. *See id.*

In terms of the plaintiff's current employment status at DOE, the most recent information before the court shows that as of May 31, 2001, the plaintiff was employed by DOE as an EEO specialist at a GS–14 [1] grade. *See* Def.'s Mot. for Summ.J., Ex. A.

### B. Procedural History

On December 31, 1998, the plaintiff filed a two-count complaint against the defendant with this court.[2] Count One alleges breach of the written settlement agreement, and Count Two alleges race discrimination and retaliation. *See* Compl. Count Two specifically alleges that the defendant engaged in discrimination and retaliation against the plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*, in the following ways: (1) in 1980, by not classifying the plaintiff's position as GS–14, after the plaintiff alleged that more minority DOE employees were being downgraded than white DOE employees; (2) in 1990, by again declining to classify the plaintiff's position as a grade GS–14; (3) in 1991, after re-classifying the plaintiff's position as GS–14, by attempting to prevent the plaintiff from receiving the corresponding promotion; (4) in 1996, by failing to select the plaintiff for the position of Director of DOE's EEO Group; (5) in 1995 and 1996, by excluding the plaintiff from meetings; (6) in 1996, by ordering the plaintiff's supervisor to lower his 1995 performance rating, and; (7) by failing to investigate the plaintiff's 1996 EEO complaint despite EEOC orders to do so. *See id.* ¶¶ 14–16.

The defendant filed a motion to dismiss portions of Count Two, which this court

---

1. "GS–14" corresponds to the fourteenth level of the U.S. Federal Government's General Schedule (GS) pay plan. The government employs the GS plan to determine the salaries of federal employees. There are 15 GS levels in all, and a federal employee's salary increases as that employee's level on the scale increases. For 2002, the salary of a GS–14 employee is $70,205.00. *See* http://www.usajobs.opm.gov/B5A.htm

2. The plaintiff's complaint originally named Richard W. Riley as the defendant in the action. Riley was Secretary of DOE until he was replaced by his successor, Roderick Paige. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Paige substitutes as the proper defendant. *See* Fed.R.Civ.P. 25(d)(1). To be sure, when a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the officer's successor is automatically substituted as a party. *See id.*

granted in part and denied in part in a Memorandum Opinion and Order, dated April 27, 2000. *See Kilpatrick v. Riley*, 98 F.Supp.2d 9, 21 (D.D.C.2000). In its Memorandum Opinion, the court: (1) dismissed the portion of Count Two that relates to the 1980 event, both for failure to exhaust administrative remedies and for failure to seek relief within the limitations period, and determined that the untimeliness of the plaintiff's 1980 claims could not be saved by the continuing-violation doctrine; (2) dismissed the 1990, 1995, and 1996 claims as to retaliation because, as a matter of law, there is no causal link between the plaintiff's pre–1980 report and the alleged retaliatory conduct of the defendant 10, 15, and 16 years later, and; (3) dismissed the portion of Count Two that relates to the defendant's failure to investigate the 1996 complaint because such conduct does not constitute an "adverse personnel action" under Title VII. *See* Mem. Op. dated April 27, 2000 at 8–24.

On February 20, 2001, the plaintiff filed a motion for leave to amend his complaint to add three new claims. In a Memorandum Opinion and Order dated April 17, 2001, the court denied leave to amend the complaint as for the first two claims because of their futility. *See* Mem.Op. dated April 17, 2001. The court granted the plaintiff leave to amend the complaint with respect to the third claim. *See id.*

The first claim asserted "a continuing-violation claim with respect to payment of a discriminatory wage since June, 1980."

Pl.'s Mot. to Am. at 1–2. In deciding the motion to amend, this court recognized that "the defendant correctly asserts that '[t]o allow [the][p]laintiff the opportunity to amend his complaint [to add this continuing-violation claim] ... would prove futile in that the claims would immediately be subject to dismissal on precisely the same grounds upon which this court previously dismissed the 1980 claim.'" Mem.Op. dated April 17, 2001 at 6 (quoting Def.'s Opp'n to Mot. to Am. at 6).[3]

The second claim that the plaintiff sought to add was a retaliation claim under Title VII, "whereby, as a member of the EEO staff responsible for counseling, acceptance, investigation and adjudication of EEO complaints other than his own, he 'participated ... in an investigation, proceeding, or hearing under this [T]itle.'" Mem.Op. dated April 17, 2001 at 8 (quoting Pl.'s Mot. to Am. at 2). In his motion to amend, the plaintiff argued that although this proposed claim arose out of the same events as the claims that were dismissed by this court, "the [c]ourt never considered that aspect of the retaliation that related to [the] [p]laintiff's status as a member of the EEO staff." Pl.'s Mot. to Am. at 2. In its April 17, 2001 Memorandum Opinion, the court determined that the plaintiff had not given any explanation for his failure to introduce this theory of retaliation when he filed the original complaint, which described at length the same alleged retaliatory acts that he now speculates were motivated by his role as an EEO employee.[4]

---

**3.** In its April 27, 2000 Memorandum Opinion, the court determined that the plaintiff "adequately alleged the continuing-violation theory in both the instant complaint and his 1991 EEO complaint." Mem.Op. dated April 27, 2000 at 10. Because by 1980, however, "he already believed that DOE systematically discriminated against non-white employees," but did not seek relief until after the limitations period, "[the plaintiff] cannot avail himself of the continuing-violation theory to save his unexhausted, untimely claim...." *Id* at 12–14.

**4.** In its April 17, 2001 Memorandum Opinion, the court stated that "[t]he plaintiff had adduced no facts which, if proven, would justify his newfound belief that his role as an EEO counselor motivated the alleged retaliation." Mem.Op. dated April 17, 2001 at 10. The court "discerned no reason why the plaintiff would just now come to the realization that

*See* Mem.Op. dated April 17, 2001 at 9–10. Thus, the court also denied the plaintiff's motion to amend the complaint by adding this second claim because of its futility. *See id.* at 11.

The third claim, which the plaintiff sought to add, arose out of the defendant's alleged failure to honor an *oral* settlement agreement reached by the parties in April 1997.[5] *See* Pl.'s Mot. to Amend at 2–3 (emphasis added). In its April 17, 2001 Memorandum Opinion, this court granted the plaintiff leave to amend, "[s]ince the court has not addressed the substance of this proposed claim [concerning the written agreement], and [because] there is no other reason to believe [that the] addition [of the oral agreement claim] would be futile." Mem.Op. dated April 17, 2001 at 11–12.[6]

In sum, six of the plaintiff's claims have survived the defendant's motion to dismiss and the defendant's opposition to the plaintiff's motion to amend. The March 31, 2000 order, which granted in part and denied in part the defendant's motion to dismiss, allowed the plaintiff to move forward in the case on the following claims: (1) the breach of settlement agreement claim; (2) the race discrimination claim, which was the subject of a 1991 EEO complaint filed by the plaintiff; (3) the race discrimination claim concerning the plaintiff's non-promotion in November 1996; (4) the race discrimination claim concerning the plaintiff's exclusion from meetings in 1995 and the lowering of his 1995 performance rating, and; (5) the prayer for relief. *See* Order dated March 31, 2001.[7] The breach of the settlement agreement claim is contained in Count One of the plaintiff's complaint and the remaining Title VII claims fall under Count Two. *See* Compl. In addition to these claims, as stated earlier, the court granted the plaintiff leave to amend his complaint for the sixth claim, which arises from the defendant's alleged failure to honor an oral settlement agreement. *See* Mem.Op. dated April 17, 2000.

On May 30, 2001, the court granted the defendant's motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c), addressing the scheduling of depositions of certain DOE employees. *See* Order dated May 30, 2001. On July 10, 2001 and August 9, 2001, the defendant filed consecutive joint motions to stay the proceedings for one month and, on the same day they were filed, the court granted both of these motions. *See* Orders

his role as an EEO employee somehow motivated his employer's adverse actions." *Id.*

5.  The court notes that the original complaint did not specify the agreement as oral. *See* Compl. at 1–4.

6.  Before addressing the instant cross-motions for summary judgment, the court did not address the substance of the breach of the written settlement agreement claim because the defendant's motion to dismiss only challenged Count Two of the plaintiff's original complaint, which did not involve the settlement agreement. *See* Def.'s Mot. to Dis.

7.  In the plaintiff's motion for partial summary judgment, the plaintiff states that he relies on the exact language of the court's March 31, 2001 order in listing his remaining claims. *See* Pl.'s Mot. for Summ.J. at 2 n. 1. The plaintiff, however, then inserts a sex discrimination claim among the other legitimate claims. *See id.* at 3. In fact, the plaintiff's subsequent motions are replete with subtle insertions of this claim, yet this claim did not appear in his original complaint or his motion to amend. In its April 27, 2000 Memorandum Opinion, this court recognized that "[t]he complaint does not contain any allegation that ... DOE discriminated against ... [the plaintiff] on the basis of gender." *See* Mem.Op. dated April 27, 2000 at 1 n. 1. Thus, the sex discrimination claim is not properly before the court and the court does not address the claim for the purposes of resolving the cross-motions for summary judgment herein.

dated July 10, 2001 and August 9, 2001. On June 29, 2001, the defendant filed its motion for summary judgment on all the plaintiff's remaining claims and, on July 3, 2001, the plaintiff filed his motion for partial summary judgment on the settlement agreement claim. For the reasons that follow, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for partial summary judgment.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Court Grants the Defendant's Motion for Summary Judgment as to the Plaintiff's Settlement Agreement Claim Asserted in Count One of the Complaint and, Thereby, Denies the Plaintiff's Motion for Partial Summary Judgment

The plaintiff argues that the defendant breached the alleged settlement agreement of April 23, 1997, and contends further that this breach was a result of racial discrimination. *See* Compl. ¶ 13. The defendant responds by stating that there is no binding agreement and that, even if a binding agreement exists, a breach-of-settlement claim does not constitute an adverse employment action under Title VII. *See* Def.'s Mot. for Summ.J. The plaintiff and defendant both move the court for summary judgment on this claim and the court rules in favor of the defendant.

### 1. The Court Concludes That There Is No Legally Binding Settlement Agreement

■ A settlement agreement is a contract and, as such, it must fulfill the elements of a contract. *See Novecon Ltd., v. Bulgarian–American Enterprise Fund,* 190 F.3d 556, 564 (D.C.Cir.1999). As the defendant correctly states in its motion for summary judgment, "for an enforceable contract to exist there must be *both* (1) agreement as to all material terms; *and* (2) intention of the parties to be bound." *Id.* (citations omitted) (emphasis added). Thus, the plaintiff must demonstrate that both of these criteria are met, as "[t]he party asserting the existence of an enforceable contract bears the burden of proof on the issue of contract formation." *Id.*

■ In order for the plaintiff to succeed on summary judgment, the plaintiff's summary judgment motion must show the lack of any issue of material fact as to the formation of the contract, yet, here, the plaintiff's motion focuses primarily on the race discrimination portion of his breach of settlement agreement claim by averring that the 'breach' was a result of racial discrimination. *See* Pl.'s Mot. for Summ.J. The defendant, on the other hand, supplies the court with ample examples of law and fact to affirm his summary judgment motion on this issue of contract formation. *See* Def.'s Mot. for Summ.J. Most importantly, the defendant adequately demonstrates that DOE did not intend to be bound by the agreement. *See id.* at 9–12.

As stated before, the complaint names the defendant in his official capacity as Secretary of DOE. It is in this capacity that the defendant is vested with authority described in Section 412 of the Department of Education Organization Act, as amended 20 U.S.C. § 3472, which allows the Secretary to delegate authority to other individuals within DOE. *See* 20 U.S.C. § 3472, Def.'s Mot. for Summ.J., Ex. G. Pursuant to this authority, the Secretary authorized a DOE memorandum, dated September 14, 1995, which delegates "the authority to administer the Equal Employment Opportunity (EEO) Program in the Department. . . ." *See* Def.'s Mot. for Summ.J., Ex. G. That memorandum expressly states that "[t]his authority may be redelegated, except that *you may not redelegate authority to . . . approve or sign settlement agreements that include monetary provisions." Id.* (emphasis added). On April 23, 1997, the day the plaintiff claims the agreement was formed, Deputy Secretary Marshall Smith was the official that had the authority to approve a settlement agreement. *See* Def.'s Opp'n at 8.

Mary Ellen Dix, acting as Director of the EEO Group, negotiated the settlement that led to the alleged agreement. *See* Pl.'s Mot. for Summ.J., Ex. A. Yet, as just noted, Dix lacked the authority to bind DOE to any agreement made. *See* Def.'s Mot. for Summ.J. at 9–12. Also, there is evidence that the plaintiff was aware that the negotiations with Dix were not conclusively binding, as the plaintiff's motion for partial summary judgment admits that "[o]n April 23, 1997, [the] [d]efendant through its representative Mary Ellen Dix led [the] [p]laintiff to believe that if [the] [p]laintiff accepted the offer proposed at the parties' last meeting that the [p]laintiff would only have to communicate his acceptance to David Wortham, the EEO Counselor." Pl.'s Mot. for Summ.J. at 15. This statement reveals that the plaintiff did not necessarily believe that Dix had authority to bind DOE to a settlement agreement, since the plaintiff was under the impression that he must communicate his acceptance to another individual. *See id.*

■ In the end, however, the question of fact as to the plaintiff's subjective belief in Dix's authority is not an issue this court

needs to resolve, since the plaintiff's alleged reliance on Dix's authority is based on the notion of apparent authority (that Dix apparently had the authority to bind the agency). "Apparent authority is 'the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.'" *Littlejohn v. Washington Metropolitan Area Transit Authority*, 1992 WL 122755, at *2, 1992 U.S.Dist. LEXIS 7510, at *5 (D.D.C.1992) (Lamberth, J.) (quoting Restatement (Second) of Agency § 8 (1958)). As the Supreme Court has stated, apparent authority does not bind government agencies:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.... And this is so even though ... the agent may have been unaware of the limitations upon his authority.

*United States v. Dist. of Columbia*, 669 F.2d 738, 748 n. 13 (D.C.Cir.1981) (quoting *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383, 68 S.Ct. 1, 92 L.Ed. 10 (1947)).

Thus, the burden falls on the plaintiff to establish that Dix had the proper authority to enter into a settlement agreement with the plaintiff, since Dix acted on behalf of a government agency. *See id.* The plaintiff fails to meet this burden and, thus, there is "no genuine issue of any material fact" as to this required element of the contract. See Fed.R.Civ.P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Diamond*, 43 F.3d at 1540. In addition, "[a]lthough [the][p]laintiff was represented by counsel at the time of the negotiations, he chose to participate in the mediation process without counsel." Def.'s Opp'n at 2–3. Ac-

cordingly, the plaintiff could have conveniently elected to utilize counsel at some point in the negotiation process in order to determine the authority of Dix, or he could have inquired into this matter himself. In sum, the plaintiff's alleged reliance on Dix's authority is an unfortunate fact that affords him no relief as to Count One.

■ Even if the plaintiff was able to sufficiently advance a contract claim promulgated on the principle of apparent authority, the plaintiff fails to provide any specific examples of Dix explicitly claiming the authority on which the plaintiff claims to have relied. Instead, the plaintiff relies on a negative inference from the fact that "the [g]overnment cannot point to one single document that ever informs the [p]laintiff that Ms. Dix lacked the authority to cause the written execution of the settlement agreement." Pl.'s Mot. for Summ.J. at 14. In addition to stating a weak basis on which to establish Dix's 'authority,' this statement betrays the fact that a writing was most likely contemplated. This negative inference undermines the plaintiff's claim that the defendant breached an oral agreement, which is not possible in any case, since Dix did not have authority to enter into an oral or written agreement on behalf of DOE. The guiding rule is that "[t]he party asserting the existence of an enforceable contract bears the burden of proof on the issue of contract formation." *Novecon Ltd.*, 190 F.3d at 564.

The court must therefore look to the facts advanced by the plaintiff in support of his burden. Along this line of reasoning, the plaintiff states that he has worked for DOE (and its predecessor, the U.S. Department of Health, Education, and Welfare) since 1968, and has been a DOE EEO Specialist since 1974. *See* Pl.'s Mot. for Summ.J., Ex. A. Having worked as an EEO Specialist for more than 20 years, the plaintiff may have reason to know of

the fact that "a written agreement in the context presented here is not only contemplated, it is *required* by EEOC regulation." Def.'s Mot. for Summ.J. at 9 (relying on 29 C.F.R. § 1614.603) (emphasis in original). Section 1614.603 expressly states that "[e]ach agency shall make reasonable efforts to voluntarily settle complaints of discrimination ... [and][a]ny settlement reached shall be in writing and signed by both parties and shall identify claims resolved." 29 C.F.R. § 1614.603. These facts amount to a very difficult burden for the plaintiff to overcome, as "[w]here the parties contemplate a subsequent written contract, this burden is particularly onerous." *See Novecon Ltd.*, 190 F.3d at 564.

The D.C. Circuit has clearly held that "[w]here a case turns on a construction of a contract, the district court may decide the matter on summary judgment if the agreement 'admits of only one reasonable interpretation.' " *Saksenasingh v. Secretary of Educ.*, 126 F.3d 347, 349 (D.C.Cir. 1997) (internal citations omitted). Coupling this rule with the direction given by the Supreme Court in *Federal Crop Ins. Corp.*, the court concludes that the only reasonable interpretation of the settlement agreement dispute is that there was no settlement agreement in the first place because DOE was not bound as a result of Dix's lack of authority to enter into contracts on behalf of DOE. *See id.; Federal Crop Ins. Corp.*, 332 U.S. at 383, 68 S.Ct. 1. Accordingly, the court grants the de-fendant's motion for summary judgment as to the plaintiff's settlement-agreement claim.

**2. The Court Need Not Address Whether the Alleged Breach of the Settlement Agreement was Motivated By Racial Discrimination**

In addition to the plaintiff's breach of settlement agreement claim, the plaintiff also contends that the 'breach' was a result of racial discrimination. *See* Compl. ¶ 13. Yet, as stated before, there was no agreement to begin with and, therefore, no breach. As such, the plaintiff has no foundation on which to base his discrimination claim. In addition, as the court has held before, this claim is not enforceable under Title VII as an adverse personnel action because it is appropriately addressed under principles of contract law. *See Kilpatrick*, 98 F.Supp.2d at 21.[8] As a result, the court grants summary judgment to the defendant on this issue as well.

**C. The *McDonnell Douglas* Framework**

To prevail on a claim of race discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds

---

**8.** " '[C]ourts applying Title VII have consistently focused on ultimate employment decisions such as hiring, granting leave, promoting, and compensating ... [and not] interlocutory or intermediate decisions having no immediate effect upon employment decisions.' *Taylor v. FDIC*, 132 F.3d 753, 764 (D.C.Cir.1997); *see also Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C.Cir.1997); *Rowland v. Riley*, 5 F.Supp.2d 1, 3 (D.D.C.1998). This court has recognized that 'an employee need not be fired, demoted or transferred to make out a case of retaliation [or discrimination].' *Gary v. WMATA*, 886 F.Supp. 78, 90 (D.D.C.1995). An employment decision does not rise to the level of an actionable adverse action, however, unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage. *See Childers v. Slater*, 44 F.Supp.2d 8, 19 (D.D.C.1999)."

*Kilpatrick*, 98 F.Supp.2d at 21.

in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

■ Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140–143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As a general matter, a prima-facie case of discriminatory denial of promotion based on race consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir. 1981).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of produc-

tion. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *See McDonnell Douglas,* 411 U.S. at 802–805, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See id.* As the Eleventh Circuit has explained:

[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (en banc).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'" and that the plaintiff's membership in a protected class was the true reason for the employment action. *See Reeves,* 530 U.S. at 142–144, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves,* 530 U.S. at 142–144, 120 S.Ct. 2097; *Aka,* 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Reeves,* 530 U.S. at 142–144, 120 S.Ct. 2097 (citing *Burdine,* 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin,* 116 F.3d at 1554. In *Aka,* the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka,* 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that maybe available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka,* 156 F.3d at 1289.

In *Reeves,* the Supreme Court reaffirmed the principles set forth in *Aka.* Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves,* 530 U.S. at 147–149, 120 S.Ct. 2097; *see also Aka,* 156 F.3d at 1289.

Lastly, the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982));

*see also Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin,* 116 F.3d at 1556 (quoting *Fischbach,* 86 F.3d at 1183). "It is not enough ... to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Applying these legal standards to the instant case, the court will grant the defendant's motion for summary judgment.

## D. The Court Grants the Defendant's Motion for Summary Judgment as to the Plaintiff's Title VII Race Discrimination Claims

The court now turns to the plaintiff's remaining claims, which are listed as follows: (1) the race discrimination claim, which was the subject of a 1991 EEO complaint filed by the plaintiff; (2) the race discrimination claim concerning plaintiff's non-promotion in November of 1996, and; (3)the race discrimination claim concerning the plaintiff's exclusion from meetings in 1995 and the lowering of his 1995 performance rating. *See* Order dated March 31, 2001. The defendant contends that these claims "have been extinguished by operation of [the plaintiff's] membership in a class [of DOE African American employees] defined in a class action lawsuit in which the settlement agreement has been ... approved by [U.S. District] Judge James Robertson." Def.'s Mot. for Summ.J. at 12, (referring to *Grant v. Riley,* Civ. No. 00–1595).

The class is defined as " 'all Black employees, not of Hispanic dissent, who were employed in grades GS–11 through GS–15 at the Department of Education headquarters in Washington, D.C. ... between February 4, 1991 and the present. ...' [T]he [p]laintiff in this case is a black male who is currently a GS–14 ...." Def.'s Mot. for Summ.J. at 12 (quoting Class Action

Compl. at ¶ 1). Thus, it is obvious that the plaintiff is a member of this class. *See id.*

As a member of that class, the plaintiff's claims with regard to race discrimination in the case at bar are not valid since the "Class Settlement explicitly provides [that] ... '[t]his Settlement Agreement ... resolves and extinguishes all claims that any Class Member as an individual may have on the allegations raised in the Class Complaint. ...' " *Id.* at 14 (quoting Class Action Settlement Agreement at 4). The class complaint contains allegations that clearly implicate the plaintiff's claims at bar because it specifically "alleges that the *system by which promotions* are made at DOE has *adversely affected black professional employees* and identifies those specific practices that have disadvantaged members of the putative class," and further states that "[t]he *promotion selection process* and each policy or practice challenged here have affected all *black professional employees* at ... DOE." *Id.* at 13 (Class Action Compl. at ¶ 33) (emphasis added). Thus, it is clear from the class complaint that the plaintiff's remaining claims at bar, all of which have to do with the promotional selection process, are encompassed by the claims put forth in the class complaint. *See* Def.'s Mot. for Summ.J. at 13.

In addition, the class settlement explicitly states that "[t]his settlement agreement is contingent upon certification of a Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2). ... This Settlement Agreement is further contingent on the Court not allowing any Class Member to opt out of this agreement." *Id.* (quoting Class Settlement Agreement at 5). The plaintiff neither refutes or challenges this point. Furthermore, the D.C. Circuit has held that for a class action certified under Federal Rule of Civil Procedure 23(b)(2), a district court abuses its

discretion by allowing individual members of the class to opt out of the action, unless the court "adduce[s] ... tenable grounds upon which opting out might be permitted." *See Thomas v. Albright,* 139 F.3d 227, 235 (D.C.Cir.1998).[9] The court finds no tenable grounds here. Thus, it appears that the plaintiff, in believing that the class action would preclude his racial discrimination claims, instead asserted a sex discrimination claim in his opposition to the defendant's motion for summary judgment. *See* Pl.'s Opp'n at 12. This sex discrimination claim is invalid because it was not made in the original complaint or advanced in a motion to amend.[10]

■ Even if the court decided to entertain the plaintiff's new claim of sex discrimination, there would be no issue of material fact concerning the plaintiff's specific averment in his answers to interrogatories that his non-selection for the Director position of the EEO Group in November of 1996 "was due to discrimination against [him] because of [his] sex...." *See* Pl.'s Mot. for Summ.J., Ex. F (Interrog. 5). This is because a plaintiff must first establish a prima-facie case of prohibited discrimination in order to prevail on a claim of sex discrimination under Title VII. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. In general, and as stated previously, a prima-facie case of discriminatory denial of promotion based on sex consists of four elements:

(1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff, *and,* (4) *the position was filled by a similarly qualified employee from outside the protected class. See id.; Bundy,* 641 F.2d at 951 (emphasis added).

■ Here, the plaintiff is unable to fulfill all of the elements as stated in the *McDonnell Douglas* test for recovery on a sex discrimination[11] claim. Focusing primarily on the fourth element of the *McDonnell Douglas* test, "it is beyond dispute that *[the][p]laintiff and the selectee ... were members of the same gender and race class.*" Def.'s Mot. for Summ.J. at 16 (emphasis added). The fact that "the agency twice selected persons not of his gender for the position" is irrelevant, since both of these selectees declined to actually fill the position. *See* Pl.'s Opp.'n at 12. As the fourth prong of the *McDonnell Douglas* test delineates, the *offering* of the position to a similarly qualified employee from outside the protected class is not enough to make a prima-facie case since the position must actually be filled by such an individual. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy,* 641 F.2d at 951. Thus, the only selectee that matters in this case is the individual that fills the position at issue. *See id.*

9. The court notes that the D.C. Circuit has delineated two specific situations in which it may be proper to allow an individual to opt out of a Rule 23(b)(2) class. When a Rule 23(b)(2) class seeks monetary as well as injunctive or declaratory relief, "[t]he court may conclude that the assumption of cohesiveness for purposes of injunctive relief that justifies certification as a(b)(2) class is unjustified as to claims that individual class members may have for monetary damages. In such a case, the court may adopt a 'hybrid' approach.... Alternatively, the court may conclude that the claims of particular class members are unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should be permitted on a selective basis." *Eubanks v. Billington,* 110 F.3d 87, 96 (D.C.Cir.1997).

10. *See* Footnote 3 of this opinion.

11. The court again notes that the plaintiff has not properly asserted a claim for sex discrimination. As such, the court's discussion here is framed in the context of *in arguendo. See supra* n. 9.

Here, the final DOE selectee who actually filled the position in question was a black male. *See* Pl.'s Mot. for Summ.J., Ex. A. Since the selectee is of the same race and gender as the plaintiff, the plaintiff fails to establish a prima-facie case of either race or sex discrimination concerning his non-selection for the position of Director of the EEO Group. Therefore, it is only appropriate for this court to grant summary judgment to the defendant on all of the claims of Count Two concerning Title VII race discrimination.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment in its entirety and thereby denies the plaintiff's motion for partial summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 25 day of March 2002.

### *ORDER*

DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued,

it is this _____ day of March 2002,

**ORDERED** that the defendant's motion for summary judgment is **GRANTED;** and it is

**FURTHER ORDERED** that the plaintiff's motion for partial summary judgment is **DENIED.**

**SO ORDERED.**