Sandra L. JAMES, et al., Plaintiffs,

v.

Gordon R. ENGLAND, Secretary of the Navy Defendant.

No. CIV.A. 03–1835RBW.

United States District Court, District of Columbia.

Aug. 27, 2004.

Joseph D. Gebhardt, Gebhardt & Associates, LLP, Washington, DC, for Plaintiffs.

Uldric L. Fiore, Jr., U.S. Attorney's Office, Civil Division, Washington, DC, for Defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

The plaintiffs bring this class action against the defendant, Gordon R. England, Secretary of the Navy, in his official capacity only, alleging "unlawful gender, race, age and disability discrimination in employment" pursuant to Title VII of the Civil Rights Act of 1954. Class Action Complaint ("Compl.") ¶ 1. Currently before this Court are (1) the Defendant's Motion to Dismiss or, in the Alternative for Summary Judgment ("Def.'s Mot.") and (2) the Plaintiffs' Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Plfs' Opp.'n").[1] For the foregoing reasons, this Court will deny in part and grant in part the defendant's motion.

### I. *Factual Background*

The merits of the plaintiffs' suit are not relevant to the questions currently before this Court at this time. Therefore, the facts will be discussed only to the extent necessary to resolve the pending motion. The Naval Sea Systems Command ("NAVSEA") was located in Arlington, Virginia, until July 19, 2001, when it moved to the Navy Yard in Washington, D.C. Def.'s Mot. at 10. According to the plaintiffs, the NAVSEA wanted to "eliminate [their] predominately female, heavily African American secretarial workforce. Many of the NAVSEA secretaries were over the age of 40, and a noticeable number were disabled employees." Compl. ¶ 29. In an effort to save money, the NAVSEA conducted an A–76 contracting-out study in April 1999. The study focused on 324 administrative and clerical positions, including the positions held by the plaintiffs in this case. The study concluded that the administrative and clerical positions should remain in-house, as opposed to being contracted out. *Id.* ¶¶ 33, 35, 43. As a result of the A–76 study, a reorganization was put into effect utilizing a Reduction in Force ("RIF") procedure. *Id.* ¶ 43. Thus, on March 22, 2001, 138 administrative and clerical employees received notice advising them that, under the RIF, they would be separated from their current positions on June 30, 2001. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or in the Alternative, For Summary Judgment ("Def.'s Mem.") at 7. Each affected employee was also notified that, effective July 1, 2001, they were being offered a new position in the reorganization. Defendant's Statement of Material Facts To Which There is No Genuine Dispute ("Def.'s Stmt.") at 3–4. These positions, however, could be at a lower grade than their current position, but if the employees met eligibility requirements, they would receive grade retention for up to two years. *Id.* at 4.

Between May 30, 2001 and July 20, 2001, the named plaintiffs, employees of the NAVSEA, filed individual, informal complaints with Equal Employment Opportunity ("EEO") counselors, alleging that they had been discriminated against when they received a "Specific Reduction–in–Force

---

1. Although the defendant has captioned his motion as both a motion to dismiss and a motion for summary judgment, his papers seek only to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6) and a change venue pursuant to 42 U.S.C. § 2000e–5(f)(3). Therefore, this Court will construe the defendant's motion as solely a motion to dismiss or for a change of venue.

notification and an offer to Vacant Position in Lieu of Separation" on March 22, 2001. Plfs' Opp.'n at 4. Formal individual complaints were then filed between September 6, 2001 and September 20, 2001. Def.'s Stmt. at 5. On August 29, 2001, the individual complainants filed a motion for class certification with the Equal Employment Opportunity Commission ("EEOC"), Defendant's Exhibit ("Def.'s Ex.") 13, and on November 13, 2001, a formal administrative class complaint was filed. Def.'s Ex. 14. On February 26, 2003, an EEOC Administrative Law Judge ("ALJ") dismissed the class complaint for lack of jurisdiction and directed the defendant to process the class complaint under 29 C.F.R. § 1614.302(d) as individual complaints. Def.'s Ex. 15. The Final Agency Determination ("FAD") dismissing the class complaint was dated March 21, 2003 and received by the class agent on March 27, 2003 and her counsel on March 28, 2003. Def.'s Ex. 16. The FAD informed the plaintiffs of their various rights of appeal, including appealing to the EEOC or filing a claim in federal district court. *Id.*

The defendant asserts three theories under which his motion should be granted: (1) the plaintiffs have failed to exhaust their administrative remedies; (2) the plaintiffs' complaint is untimely as a class complaint; and (3) venue in the District of Columbia is improper. Each argument will be addressed separately.

## II. *Standard of Review*

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should only be granted if the "plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiffs and must grant the plaintiffs

the benefit of all inferences that can be derived from the alleged facts. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal,* 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 (D.C.Cir. 1997).

## III. *Legal Analysis*

### (A) Did the Plaintiffs Exhaust Their Administrative Remedies?

"Prior to instituting a court action under Title VII, a plaintiff alleging discrimination in federal employment must proceed before the agency charged with discrimination. 42 U.S.C. § 2000e–16(c)." *Bayer v. U.S. Dep't of Treasury,* 956 F.2d 330, 332 (D.C.Cir.1992) (citing *Brown v. General Services Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984)). This exhaustion requirement mandates that the plaintiffs file a timely administrative claim. *Kizas,* 707 F.2d at 543. The exhaustion requirement is also a prerequisite for claims of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 633a. *Chennareddy v. Bowsher,* 935 F.2d 315, 317 (D.C.Cir.1991). EEOC regulations require that an employee who believes that he or she has been discriminated against by a federal agency "must initiate contact with a Counselor

within 45 days of the date of the matter alleged to be discriminatory or, in the case of *personnel action,* within 45 days of the *effective date* of the action." 29 C.F.R. § 1614.105(a)(1) (emphasis added). "This timeliness requirement operates like a statute of limitations and applies equally to the seeking of informal counseling—which is a prerequisite to bringing a formal charge—and the actual bringing of formal charges upon the completion of counseling." *Singleton v. Harkin,* 1996 WL 33322370, at *3 (D.D.C.1996). The counselor is required to give notice to the allegedly aggrieved person of the final interview, after which a federal employee is required to bring a formal action within 15 days. 29 C.F.R. § 1614.106(b). While this timing requirement is subject to equitable tolling, such tolling is only proper for good cause. *Currier v. Radio Free Europe,* 159 F.3d 1363, 1367 (D.C.Cir.1998); *Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir. 1997).

Although the District of Columbia Circuit

> has not exhaustively defined what constitutes an adverse personnel action under Title VII, "courts applying Title VII have consistently focused on ultimate employment decision[s] such as hiring, granting leave, promoting, and compensating ... [and not] interlocutory or intermediate decisions having no immediate effect upon employment decisions...." An employment decision does not rise to the level of an actionable adverse action, however, unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage.

*Kilpatrick v. Riley,* 98 F.Supp.2d 9, 20–21 (D.D.C.2000) (internal citations omitted).

As an initial matter, this Court must decide what was the alleged discriminatory act or personnel action that the plaintiffs challenge. The defendant argues that the plaintiffs' complaint alleges discrimination when the "NAVSEA managers 'targeted' the administrative and clerical employees for an A–76 study and when NAVSEA decided to abolish the administrative and clerical positions." Def.'s Mem. at 18. And according to the defendant, any subsequent actions discussed in the complaint, (*i.e.* the RIF) simply restated the harm that the plaintiffs had already allegedly suffered. *Id.* The plaintiffs argue, however, that their complaint is alleging discrimination based upon the RIF, which was an adverse personnel action. Plfs' Opp.'n at 7. This adverse personnel action, the plaintiffs opine, occurred when they were reassigned to new positions, and for some new positions at lower grades. *Id.;* Compl. ¶ 49. Viewing the facts set-forth in the complaint in the light most favorable to the plaintiffs, as the Court is required to do, the Court must conclude that the relief the plaintiffs seek is based upon the alleged adverse personnel actions arising from the RIF, not the A–76 study. See Compl. ¶¶ 63, 64, and 65 (seeking relief for the alleged discriminatory acts based upon the RIF). *See Parker v. District of Columbia,* 311 F.Supp.2d 103, 104 (D.D.C.2004) ("the Court construes the facts in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff").

■ This Court must next decide when the action became effective, as this is the date on which the 45–day window to contact an EEO counselor opened. The defendant argues that on March 22, 2001, the plaintiffs had received notice of the NAVSEA's "final decision to abolish their current positions and to offer them new positions in the" reorganization. Def.'s Mem. at 18. Thus, the defendant contends that since none of the plaintiffs contacted an EEO counselor within 45 days of this

notice, the plaintiffs (and thus the entire class) have failed to exhaust their administrative remedies. *Id.* The defendant cites to several cases to support his theory that the clock begins to run when the plaintiffs received the notice. These cases, however, are inappositive and easily distinguishable.

■ The defendant places great weight on the Supreme Court's decision in *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). The Court in *Ricks* was asked to decide whether Ricks had filed a timely complaint under 42 U.S.C. § 2000e–5(e) with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." *Id.* at 256, 101 S.Ct. 498. Ricks was challenging his denial of tenure, however, he did not file his EEOC complaint until one year after he received final notice that he had been denied tenure, which coincided with the end of his employment contract with the college. *Id.* at 257–58, 101 S.Ct. 498. In the case at hand, this Court is not concerned with application of 42 U.S.C. § 2000e–5(e), but rather 29 C.F.R. § 1614.105(a)(1). These provisions contain different language and provide remedies for differently situated individuals. Generally, private sector and state employees fall under the coverage of 42 U.S.C. § 2000e–5(e), while federal employees fall under 29 C.F.R. § 1614.105. *See, e.g., Burkett v. Glickman,* 327 F.3d 658, 660 (8th Cir.2003) (comparing 29 C.F.R. § 1614.105(a)(1) and 42 U.S.C. § 2000e–5(e) and stating that "the plaintiff's Title VII claims were subject to different time limits because he was not a federal employee"). More significantly, under 42 U.S.C. § 2000e–5(e), the inquiry is when the "unlawful employment practice occurred," while under 29 C.F.R. § 1614(a)(1) this Court must determine when the personnel action became effective. *Compare* 42 U.S.C. § 2000e–5(e)(1)

*with* 29 C.F.R. § 1614.105(a)(1). If 42 U.S.C. § 2000e–5(e) and 29 C.F.R. § 1614.105(a)(1) had identical language, then *Ricks* would obviously control, but they do not.

The defendant also relies on *Singleton v. Harkin,* 1996 WL 33322370 (D.D.C.1996). In *Singleton,* the court concluded, applying 29 C.F.R. § 1614.105(a)(1), that a "discriminatory event" occurred, thus triggering the requirement to act, when the plaintiff received notice of the RIF terminating his employment. *Id.* at *6. Although *Singleton* concerned the application of 29 C.F.R. § 1614.105(a)(1), its discussion primarily centers around when a "discriminatory event" occurred as opposed to when was the effective date of a personnel action. Furthermore, there is nothing in the opinion to suggest that Mr. Singleton's termination did not occur simultaneously with the receipt of the RIF notice. This is certainly not the case here, since the RIF was issued on March 22, but did not become effective until July 1, 2001. Thus, *Singleton* is also distinguishable from the case at bar. And the remaining cases on which the defendant relies are equally as unpersuasive. *See Dring v. McDonnell Douglas Corp.,* 58 F.3d 1323, 1328 (8th Cir.1995) (analyzing *Ricks* and concluding that under 29 U.S.C. § 626(d) and Missouri law—as opposed to 29 C.F.R. § 1614.105(a)(1)—the time to act begins to run when the plaintiff receives notice of termination); *Kyriakopoulos v. George Washington Univ.,* 866 F.2d 438, 448 (D.C.Cir.1989) (applying *Ricks* ).

This Court finds more persuasive the line of cases actually interpreting and applying the clear requirements in 29 C.F.R. § 1614.105(a)(1), which are at issue here. In *Scarborough v. Natsios,* 190 F.Supp.2d 5 (D.D.C.2002), the court was presented with the issue of when the 45–day clock began to run for a plaintiff who was noti-

fied on November 16, 1993 of his mandatory retirement, which would become effective on April 30, 1994. *Id.* at 15. The plaintiff contacted the EEOC on February 17, 1994 and filed an EEOC complaint the same day, more than two months before his mandatory retirement would become effective. *Id.* at 15–16. The court determined that the 45–day period commenced on the effective date of the mandatory retirement, not on the date he received notice that he was being forced to retire. *Id.* The court reasoned that "[a]s the plain language of the regulation indicates, the 45–day filing period begins to run from the 'effective date of the [personnel] action' *not from notice of that action.*" *Id.* at 15 (emphasis added). Thus, the court concluded that because the plaintiff had contacted the EEOC and filed a complaint with the agency prior to the effective date of the personnel action, his administrative complaint was timely.[2] *Id.* at 15–16. Other courts have interpreted 29 C.F.R. § 1614.105(a)(1) in the same manner. *See Jakubiak v. Perry,* 101 F.3d 23, 26–27 (4th Cir.1996) (concluding that the 45–day clock begins to run from the date of the challenged personnel action and not notice of the action); *Stewart v. Widnall,* 1996 WL 905937, at *8 (S.D.Miss.1996) (finding that the 45–day window in which to contact an EEO counselor ran from the date of non-selection for an employment position).

■ Each of these cases involved federal employees and application of the clear language in 29 C.F.R. § 1614.105(a)(1) and they all concluded that the 45–day window to contact an EEO counselor does not begin to run until the effective date of the personnel action. Applying the same principle here, the personnel action was the reassignment to a new position and for some the reduction in grade brought about by the RIF. The fact that the plaintiffs had notice of the RIF in March has no bearing on this timeliness analysis because it is not until the effective date of the personnel action that the 45–day window opened. Thus, on July 1, 2001, when the employees returned to work in their new rolls, the personnel action became effective and the 45–day window opened at that time. Because the plaintiffs contacted an EEO counselor prior to August, 14, 2001, the date when the 45–day window closed, this Court can not dismiss the plaintiffs' claims for failure to exhaust their administrative remedies.

**(B) Was the Denial of the Plaintiffs' Class Certification Timely Challenged in this Court?**

Once an agency issues a FAD regarding a federal employee's Title VII claim, the employee has two options to challenge the decision. The employee can either proceed under 29 C.F.R. § 1614.403 and appeal to the EEOC or proceed under 42 U.S.C. § 2000e–16(c) and file a lawsuit in federal district court. If the employee appeals to the EEOC, the appeal must be filed within thirty days of receipt of the FAD. *See* 29 C.F.R. § 1614.403. A filing in federal court must be timely under 42 U.S.C. § 2000e–16(c), which states:

> *Within 90 days of receipt of notice of final action* taken by a[n] ... agency ... or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such ...

**2.** The defendant here argues that the plaintiffs' act of contacting an EEO counselor prior to July 1, 2001, demonstrate that they knew prior to that date that they had received the Agency's final decision which was capable of EEO review. Defendant's Reply at 8. However-

er, based on the ruling in *Scarborough,* it is clear that the plaintiffs could seek EEO review prior to the effective date of the personnel action. *Scarborough,* 190 F.Supp.2d at 15–16.

agency ... on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, ... *or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal* from a decision or order of such ... agency ... until such time as final action may be taken by a[n] ... agency ..., an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, *may file a civil action* as provided in section 2000e–5 of this title, in which civil action the head of the ... agency..., as appropriate, shall be the defendant.

42 U.S.C. § 2000e–16(c) (emphasis added). "If a complaint if not filed within that [90 day] time period, it may be dismissed as untimely." *McKay v. England,* 2003 WL 1799247, at *1 (D.D.C.2003) (citing *Brown v. Gen. Services Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). These time limits apply to both individual and class claims of employment discrimination. *See, e.g.,* 29 C.F.R. § 1614.403(a) (describing the appellant as either a complainant or individual class claimant).

The defendant argues that the plaintiffs have failed to timely challenge the ALJ's denial of class certification in this Court because it was not filed within 90 days of the receipt of the FAD denying class certification. Def.'s Mem. at 19–21 (citing 42 U.S.C. § 2000e–16(c)). Thus, the defendant contends that because the plaintiffs received a final agency determination on the class complaint on March 27, 2003, they had 90 days from that date to challenge the decision in federal district court, which they did not. Def.'s Mem. at 19–21. The plaintiffs argue, however, that the final agency decision did not occur until June 5, 2004, the date on which the named plaintiffs and named class members received a final agency decision on their individual claims. Plfs.' Opp.'n at 9–11. This position is based on the plaintiffs' theory that they were required to exhaust all of their individual claims before filing an action in federal district court. *Id.* Furthermore, the plaintiffs argue that the March 27, 2003 letter was not a final decision because the ALJ directed the agency, in denying class certification, to process the class complaint as individual complaints, which it did. *Id.* Thus, the precise question before this Court is whether a party must exhaust her individual administrative remedies before challenging the denial of a class certification.

The Tenth Circuit, discussing the administrative processing of class complaints, noted that "[t]hese class administrative procedures create[ ] a detailed scheme markedly different than the administrative mechanism for addressing individual discrimination claims." *Gulley v. Orr,* 905 F.2d 1383, 1384–85 (10th Cir.1990); *see also Wade v. Sec. of Army,* 796 F.2d 1369, 1373 (11th Cir.1986). The court concluded that

In light of the distinct administrative mechanism created specifically to address class claims of discrimination, the weight of authority addressing this issue has held that exhaustion of individual administrative remedies is insufficient to commence a class action in federal court; rather, one of the named plaintiffs *must have exhausted class administrative remedies.*

*Gulley,* 905 F.2d at 1384–85 (emphasis added) (citation omitted); *see also Wade,* 796 F.2d at 1373. Thus, courts have concluded that "individual allegations of discrimination can be exhausted through a class administrative complaint." *Monreal*

*v. Potter*, 367 F.3d 1224, 1231–32 (10th Cir.2004). As the Tenth Circuit noted, judicial efficiency also favors such a rule because "[r]equiring class agents to file both a class complaint and separate individual complaints would be a waste of time when all allegations can be presented together in a class complaint." *Id.* at 1234.

■ Under a different procedural posture, the District of Columbia Circuit has also concluded that exhaustion of individual administrative remedies is not always required to participate in a Title VII class action lawsuit. In *Cook v. Boorstin*, 763 F.2d 1462 (D.C.Cir.1985), thirty-one plaintiffs, most of whom failed to file timely individual administrative complaints, filed a motion to intervene in a Title VII class action case in federal court pursuant to Rule 24(a)(2). *Id.* at 1464. The district court denied the motion. *Id.* at 1464–65. When examining whether the district court properly denied the motion based on the plaintiffs' failure to exhaust their administrative remedies, the court noted that "[a]long with other circuits, this court has allowed the exhaustion requirement to be satisfied vicariously under certain circumstances." *Id.* at 1465. And, the court concluded that "the failure by some of the [plaintiffs] to file individual administrative complaints does not bar their intervention in this action." *Id.* at 1465–66. The court reasoned that "[w]here the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate [administrative] charges, then it would be 'wasteful, if not vain' ... to require separate ... filings." *Id.* at 1466 (citing *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C.Cir.1981)). Thus, the District of Columbia Circuit has permitted intervention in Title VII class action lawsuits by parties even if they have not exhausted their administrative remedies. Although *Cook* has a different procedural posture than the case at hand, it seems clear that the Circuit Court, in the interest of judicial economy and fairness, would conclude, as the Tenth and Eleventh Circuits have, that "individual allegations of discrimination can be exhausted through a class administrative complaint." *Potter*, 367 F.3d at 1231–32.

Furthermore, to hold otherwise, and to require "separate exhaustion of the class allegations and the class agent's individual allegations that form the basis of the class allegations could create conflicting deadlines for filing a civil action such that all the deadlines could not be satisfied ...." *Id.* at 1234. Accordingly, the Eleventh Circuit similarly concluded that:

> To the extent that the district court's order can be read to require that a complainant appeal the rejection of a class complaint to the EEOC, pursue individual claims of discrimination with the agency or take any other action at the administrate level prior to commencing a civil action in federal district court, it cannot be reconciled with the regulations. Were the "rejected" agent to pursue his or her individual claims past the thirty-day [now ninety-day] period for filing in federal court, he or she might risk being held to have foregone any future rights to seek class certification in federal court. Given this risk and the fact that the regulations create a right to invoke federal court jurisdiction upon receipt of notice of a final agency decision, it would be unjust to hold that appellants' complaint was due to be dismissed for failure to take advantage of available administrative avenues of redress.

*Wade*, 796 F.2d at 1375 (interpolation in original).

■ The potential for conflicting filing deadlines are an inevitable result when both individual and class complaints are

administratively and then judicially filed in employment discrimination cases. This potential was acknowledged in *Potter,* *Gulley,* and *Wade.* What is clear from all of these cases is that to preserve the ability to pursue a court action on either track, compliance with the exhaustion of the administrative remedy requirements for that particular track is required. Thus, in this dual situation, for individual class members to pursue their individual claims in federal court, the complainants must exhaust their individual administrative remedies and for the related class complaint also to be pursued in federal court, the class agent must exhaust the class' administrative remedies. However, as the Tenth and Eleventh Circuits have made clear, the failure to exhaust one's administrative remedies on one track does not impact a federal court's jurisdiction on the other and thus individuals may be part of a class even through they have not exhausted their individual administrative remedies.[3] *See Gulley,* 905 F.2d at 1384–85; *Wade,* 796 F.2d at 1373.

█ In this case, on March 21, 2003, the Department of the Navy issued its final decision (the FAD) on the class complaint affirming the ALJ's dismissal for lack of jurisdiction. The FAD was received by the class agent on March 27, 2003. Def.'s Ex. 16. The FAD notified the class agent that "[t]his [was] the Depart of the Navy's Final Order on [her] Equal Employment Opportunity (EEO) class complaint . . ." Def's Ex. 17 at 1. The letter went on to inform the class agent that if she was dissatisfied with the agency action she could either: (1) "file a Notice of Appeal with the Equal Opportunity Commission at any time up to thirty (30)

calendar days after receipt of this Final Order," *id.* at 2, or (2) "[i]n lieu of appeal to the Commission, [she] may file a lawsuit in the appropriate United States District Court . . . . within ninety (90) days of receipt of the Final Order on an individual or class appeal if no appeal to the Commission has been filed." *Id.* at 3. Thus, the letter received by the class agent advised her that she could immediately challenge the adverse agency action. The FAD makes no mention of exhausting individual claims prior to challenging the denial of the class complaint. The plaintiffs do not, nor can they, claim lack of proper notification of their rights to challenge the FAD.

█ The plaintiffs claim that they had to exhaust their administrative remedies related to the individual claims prior to challenging the dismissal of their class complaint. Plfs' Opp.'n at 11–12. However, the plaintiffs do not cite any statutory or other legal authority as support for this position and this Court has been unable to locate any. As both the Tenth and Eleventh Circuits have made clear the right to challenge the FAD in federal court or before the EEOC is not predicated upon the exhaustion of administrative remedies related to the individual class members' claims. *Gulley,* 905 F.2d at 1384–85; *Wade,* 796 F.2d at 1373. These courts have addressed that question in the context of answering whether a timely filed class complaint should be dismissed for failure to exhaust individual administrative remedies. Although the question in this case is whether a party must exhaust individual administrative remedies before challenging in federal court the administrative decision denying class certification, this

---

**3.** Undoubtedly, if individuals *only* pursue remedies in a class complaint and do not satisfy the exhaustion requirements related to individual claims, such individuals risk losing their right to purse individual employment discrimination claims. This would therefore obviously be a risky tactic because if the class complaint is dismissed, such individuals will be without the ability to pursue their individual claims.

Court finds those cases analogous to the question presented here and can fathom no reason for taking a different position. Thus, since the plaintiffs were not required to exhaust their administrative remedies related to individual claims before challenging the denial of their request for class certification, the challenge in this Court to the class certification denial had to be timely made pursuant to 42 U.S.C. § 2000e–16(c). The one exception to this exhaustion requirement would be the situation where equitable reasons are asserted for tolling the timing requirement, but no such claim is raised by the plaintiffs here. *See McKay*, 2003 WL 1799247 at *3 ("The 90–day period is subject to equitable tolling. However, ... plaintiff bears the burden of pleading and proving equitable reason for his failure to adhere to the 90–day limit") (citing *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C.Cir.1982)).

For the foregoing reasons, this Court must conclude that the 90–day clock to challenge the administrative dismissal of the class complaint in this Court began to run upon receipt of the Department of Navy's final order. The plaintiffs did not file their class complaint in this Court until well past the close of the 90–day window and, therefore, this Court does not have jurisdiction to review the class claims.[4] However, because the plaintiff's individual claims were timely challenged in this Court, they survive the defendant's motion to dismiss.[5]

### (C) Is Venue in this Court Proper?

The defendant contends that proper venue for this case lies in the United States District Court for the Eastern District of Virginia. Def.'s Mem. at 24–26. When determining whether this Court will transfer a case for improper venue, this Court must accept the "plaintiff's well-pled factual allegations regarding venue as true, draw[ ] all reasonable inferences from those allegations in the plaintiff's favor, and resolve[ ] any factual conflicts in the plaintiff's favor." *Darby v. Dep't of Energy*, 231 F.Supp.2d 274, 277 (D.D.C.2002). Under 42 U.S.C. § 2000e–5(f)(3), a plaintiff may bring a Title VII action in:

any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

Thus, under the clear language of this statute, a Title VII action may be brought in one of three judicial districts—where the unlawful employment practice occurred; where the relevant employment

4. Admittedly, the scope of the Court's review could be challenged if the only agency action that is being appealed is failure to certify a class. However, this Court agrees with the Eleventh Circuit

 that upon determining that the employee in fact complied with the regulations (or was prevented by the agency from doing so) and that the agency therefore rejected the individual or class complaint without cause, the court should not direct the employee or

class agent to return to the agency to give the agency a second opportunity to resolve the dispute but should conclude that administrative remedies are exhausted and go on to try all issues in the case on their merits. *Wade*, 796 F.2d at 1378.

5. Because this Court does not have jurisdiction to entertain the class complaint, the Court is compelled to deny the plaintiffs motion for class certification.

records are located; or where the plaintiff would have worked but for the challenged employment practice. Only if the employer is not found within one of those districts, may the action be brought in the judicial district where the employer has its principal office. The application of this statute is generally straight forward. *See Lee v. England,* 2004 WL 764441 *1 (D.D.C.2004) (noting that venue was proper in Maryland when the "plaintiff's duty station [was] Bethesda, Maryland; all of his work assignments [were] made there; and everything having to do with [the] plaintiff's present EEO complaint, except for clerical functions such as docketing, [was] handled in Bethesda."); *Elezovic v. England,* 2003 WL 22383583 *2 (D.D.C. 2003) (same).

 The defendant references the following facts to support his contention that under 42 U.S.C. § 2000e–5(f)(3) venue is proper in the Eastern District of Virginia. First, the NAVSEA headquarters and the principal office of Peter Brown, Executive Director of NAVSEA, were located in Arlington, Virginia until July 19, 2001. Def.'s Mem. at 23. Additionally, the plaintiffs' employment records are located in Silverdale, Washington for current employees and St. Louis, Missouri for former employees. *Id.* Finally, the location of the plaintiffs' original employment was in Arlington, Virginia and three of the plaintiffs continue to be employed in Virginia. *Id.* at 24. The plaintiffs argue, however, that although the NAVSEA's offices were not officially moved to the Washington Navy Yard in the District of Columbia until July 19, 2001, the actual relocation of employees occurred during the several preceding months and many of the plaintiffs were transferred to the Washington Navy Yard in April 2001. Plfs' Opp.'n at 14–15. The plaintiffs also maintain that the relevant employment records, including the (1) EEO records; (2) records of budgetary decisions; (3) records of the A–76 study; and (4) records regarding the RIF action are located at the Washington Navy Yard. *Id.* at 16. Finally, the plaintiffs contend that but for the defendant's discriminatory RIF, they would have worked at the Washington Navy Yard. *Id.* at 16.

After reviewing the facts presented in both the pleadings and exhibits presented to this Court, and drawing all reasonable inference in the plaintiffs' favor as this Court is required to do, it is clear that venue is proper in the District of Columbia. As already discussed, the alleged unlawful employment practice occurred on the effective date of the RIF, July 1, 2001. This date was prior to the official date the NAVSEA moved, but according to the exhibits presented to this Court by the defendant, most of the plaintiffs had already been transferred to the Navy Yard prior to the July 1, 2001 effective date of the RIF, most in or near April 2001. Thus, for all plaintiffs who had already moved to the Washington Navy Yard prior to July 1, 2001, the district in which the "employment practice is alleged to have been committed," is the District of Columbia. *See James v. Booz–Allen,* 227 F.Supp.2d 16, 21 n. 3 (D.D.C.2002) (concluding that venue was not proper in the District of Columbia because the discriminatory act occurred outside of the District).

Additionally, all of the plaintiffs have satisfied the third-prong of 42 U.S.C. § 2000e–5(f)(3). All of them contend, and the defendant does not refute, that all of the plaintiffs would have been transferred to the Washington Navy Yard if not for the RIF. Plfs' Opp.'n at 16–17. Thus, this Court must conclude that venue in the District of Columbia is appropriate because this is the judicial district in which the all the plaintiffs would have worked

but for the alleged discriminatory RIF.[6] *Amirmokri v. Abraham,* 217 F.Supp.2d 88, 90 (D.D.C.2002) (concluding that venue is proper in Maryland because the plaintiff was working in Maryland and "would have continued to work in that office but for the alleged unlawful employment practice."); *Johnson v. Washington Gas Light Co.,* 89 F.Supp.2d 45, 47 (D.D.C.2000) (concluding that venue is proper in the District of Columbia under the third-prong of § 2000e–5(f)(3) because the "record establishes that it is *likely* that, had plaintiff received one of the positions he sought, he would have been assigned to work in the District of Columbia at some point."). Thus, for the foregoing reasons, this Court declines to transfer this case to the Eastern District of Virginia.

### IV. *Conclusion*

For the aforementioned reasons, this Court denies the defendant's motion to dismiss for failure to exhaust administrative remedies. Nor will this Court transfer this case to the Eastern District of Virginia under the venue provisions of 42 U.S.C. § 2000e–5(f)(3). However, this Court has determined that the plaintiffs have not filed a timely challenge to the agency's dismissal of their class complaint and, therefore, the class claims must be dismissed.

**So ORDERED** this 27 day of August, 2004.[7]

---

**6.** The defendant concedes that either the District of Columbia or the Eastern District of Virginia would be the proper venue for plaintiffs' ADEA claims. Thus, because this Court finds the District of Columbia to be the appropriate venue for plaintiff's Title VII claim, it is

in the interest of justice to have the claims heard collectively. *See, e.g., Choi v. Skinner,* 1990 WL 605543, at \*2 (D.D.C.1990).

**7.** An Order consistent with this Court's ruling accompanies this Memorandum Opinion.